EXHIBIT B



# PLEDGE AGREEMENT

JOHN F BARRETT, 333 W 56TH ST 10FG NEW YORK NY 10019, (hereinafter jointly and severally if more than one, referred to herein as the "Pledgor"), and Signature Bank, having an office located at 565 Fifth Avenue, 12th Floor, New York, New York 10017, (hereinafter referred to herein as the "Bank"), hereby agree as follows:

1. Definitions. The following definitions apply:

Borrower: shall mean **MEZZ57TH LLC** (hereinafter jointly and severally if more than one, referred to herein as "Borrower").

Liabilities: All obligations, indebtedness and liability of any type whatsoever of the Borrower and the Pledgor to the Bank, which arise out of or in connection with or which in any way relates to certain Letters of Credit issued by the Bank for the account of the Borrower in the original amount of : ONE MILLION FIFTY THOUSAND SEVEN HUNDRED TWENTY and 00/100 ($1,050,720.00) Dollars, (hereinafter referred to herein as the "Loan") executed in connection herewith, whether now existing or hereafter incurred, whether direct, indirect, absolute or contingent, whether otherwise guaranteed or secured, and howsoever evidenced or acquired, and expenses or costs incurred by the Bank in the administration of this Pledge Agreement and the enforcement of any of its rights with respect thereto.

For and in consideration of the sum of TEN ($10.00) DOLLARS, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and for and in consideration of inducing the Bank to lend to the Borrower the principal sum referred to hereinabove, the Pledgor hereby pledges to the Bank as collateral security for said loan, the following pledged collateral:

Pledged Collateral: (i) The property delivered or otherwise transferred by the Pledgor to the Bank and consisting, as of the date of this Agreement, of the property described on affixed **Exhibit A attached hereto and made a part hereof**; and/or any and all substitutions, additions and accessions thereto upon which the Pledgor hereby grants and pledges to the Bank and upon which the Bank shall have absolute control over the pledged collateral which shall include, but not be limited to, investment property, securities, security entitlements and any and all financial assets credited to said pledged collateral; (ii) any and all securities (both certificated and uncertificated), closely held capital stock, notes, mortgages, instruments, documents, letters of credit, certificates of deposit, deposit accounts, bank accounts, balances in any account of the Pledgor with the Bank, and all other property interests which may subsequently be delivered or transferred by the Pledgor to the Bank; (iii) any of the foregoing when put in transit to the Bank; (iv) in the case of securities and closely held capital stock, Pledged Collateral shall include, without limitation, all shares of any class of the capital stock of the issuer which shall be issued or distributed (by way of stock dividends or otherwise) or sold by the issuer to the Pledgor at any time or times after the date of this Agreement or which shall be purchased or otherwise acquired by or on behalf of the Pledgor from the issuer or from any other person or persons at any time or times after the date of this Agreement; all dividends of every kind which shall become and be due and payable or distributable on or in respect of all or any of the securities and closely held capital stock; all payments of every kind whatever which shall become and be due and payable or distributable on account of the purchase, redemption, repurchase or other retirement of all or any of the securities and closely held capital stock; all other distributions of every kind (including, without limitation, all capital distributions) which shall become and be due and payable or distributable on or in respect of the securities and closely held capital stock; and (v) all proceeds of the foregoing, including, without limitation, the roll-over or reinvested proceeds of the foregoing. Any delivery or transfer of any of the Pledged Collateral to an agent or custodian designated by the Bank shall be deemed a delivery or transfer to the Bank.

2. Security Interest. The Pledgor hereby pledges, hypothecates, and impresses the Pledged Collateral with a lien in favor of the Bank, and grants to the Bank a security interest in the Pledged Collateral, to secure the punctual payment and performance of all the Liabilities.

3. Pledgor's Additional Obligations. The Pledgor agrees that: (1) any distribution in kind received by the Pledgor from any party for or on account of the Pledged Collateral, including distributions of stock as a dividend or split of any of the Pledged Collateral, shall be immediately delivered to the Bank in the form received with any required endorsement; (2) additional collateral in form and kind satisfactory to the Bank will be deposited by the Pledgor with the Bank if the Bank at any time deems the Pledged Collateral insufficient or unsatisfactory; (3) any note or other instrument executed and delivered to the Pledgor by any party to evidence any obligation of such party with respect to the Pledged Collateral shall be immediately delivered with any required endorsement to the Bank. All such items shall be held by the Bank in accordance with the terms of this Pledge Agreement.

The Pledgor agrees to pay to the Bank on demand all reasonable fees, costs and expenses incurred by the Bank in connection with the administration of this Pledge Agreement, including, without limitation, overnight courier fees, lien search fees, and filing and recording fees.

The Pledgor agrees to execute and deliver to the Bank and/or third parties designated by the Bank such additional documents, notices,

1

requests and other instruments as the Bank deems necessary or advisable to protect the Bank's rights under this Pledge Agreement.

**4. Certain Rights and Duties of Bank.** The Pledgor acknowledges that: the Bank has no duty of any type with respect to the Pledged Collateral except for the use of due care in safekeeping any of the Pledged Collateral actually in the physical custody of the Bank; prior to the occurrence of any event of default described in the succeeding paragraph the Bank's rights with respect to the Pledged Collateral shall be limited to the Bank's rights as a secured party and pledgee and the right to perfect its security interest, preserve, enforce and protect the lien granted hereunder and its interest in the Pledged Collateral; and the Bank may sell, assign or grant participations in any of the Liabilities and any of the Pledged Collateral and that the Bank's purchaser, assignee or participant shall have the same rights and privileges with respect to such Liabilities and Pledged Collateral as the Pledgor grants to the Bank under this Pledge Agreement. With respect to any Pledged Collateral with a stated maturity date (including, without limitation, certificates of deposit and other term accounts), the Bank is authorized and directed, upon maturity, to roll-over and reinvest such Pledged Collateral in a similar investment, with such tenor and interest rate or yield as the Bank, in its discretion, deems to be reflective of prevailing market conditions. Prior to the occurrence of any event of default described in the succeeding paragraph, the Bank agrees that it will not vote any Pledged Collateral constituting securities or closely held capital stock.

**5. Events of Default; Remedies.** Upon occurrence of any event of default under any instrument evidencing any of the Liabilities or of any of the following events: (1) default in the payment or performance of any other of the obligations or liabilities of the Pledgor under any agreement between the Bank and Pledgor; (2) the Pledgor, if a business entity, discontinues business operations at any of the Pledgor's locations; (3) the Pledgor is generally unable to pay debts as they become due or the Bank deems itself insecure; (4) the Pledgor makes a general assignment for the benefit of creditors; (5) the entry of a decree, order or order for relief by a court having jurisdiction of a case initiated by or against the Pledgor under the federal bankruptcy code or any other federal or state laws pursuant to which a receiver, liquidator, assignee, custodian, trustee, sequestrator, debtor in possession, examiner or other similar official, is appointed for the Pledgor or any of the Pledgor's property, with or without consent, for any purpose whatsoever; (6) a substantial part of the property of the Pledgor is taken by attachment, execution or any other form of legal process; (7) the assertion of any levy, seizure or attachment on the Pledged Collateral; or (8) death of an individual Pledgor or dissolution or termination of legal existence of a corporate, limited liability company, partnership or trust Pledgor; then the Bank, with or without notice to the Pledgor and without demand for additional collateral, may (a) transfer the Pledged Collateral into the name of the Bank or its nominee and vote any Pledged Collateral constituting securities or closely held capital stock; (b) sell at public or private sale any or all of the Pledged Collateral, which the Bank may purchase free from any right of redemption; or (c) at its discretion in its own name or in the name of the Pledgor take any action for the collection of the Pledged Collateral, including the filing of a proof of claim in insolvency proceedings, and may receive the proceeds thereof and execute releases therefor. After deducting its expenses, including reasonable attorney's fees (which may include costs allocated by the Bank's internal legal department), incurred in the sale or collection of the Pledged Collateral, the Bank shall apply the proceeds to the Liabilities and shall account to the Pledgor for any surplus. The Pledgor agrees that the Bank has no obligation to sell or otherwise liquidate the Pledged Collateral in any particular order or to apply the proceeds thereof to any particular portion of the Liabilities. The Pledgor further agrees that after the occurrence of an event of default, the Bank shall have no obligation to vote any Pledged Collateral constituting securities or closely held capital stock.

In connection with any secured party's sale, the Bank is authorized, if it deems it advisable to do so, in order to comply with any applicable securities laws, to restrict the prospective bidders or purchasers to persons who will represent and agree that they are purchasing the Pledged Collateral for their own account for investment, and not with a view to the distribution or re-sale thereof. Sales made subject to such restriction shall be deemed to have been made in a commercially reasonable manner.

**6. Power of Attorney, Etc.** The Pledgor hereby irrevocably constitutes and appoints the Bank the true and lawful attorney-in-fact for and on behalf of the Pledgor with full power of substitution and revocation in its own name or in the name of the Pledgor to make, execute, deliver and record any and all financing statements, continuation statements, assignments, proofs of claim, powers of attorney, leases, discharges or other instruments or agreements which the Bank in its sole discretion may deem necessary or advisable to perfect, preserve, enforce or protect the lien granted hereunder and its interest in the Pledged Collateral and to carry out the purposes of this Pledge Agreement, including but without limiting the generality of the foregoing, any and all proofs of claim in bankruptcy or other insolvency proceedings of the Borrower, with the right to collect and apply to the Liabilities all distributions and dividends made on account of the Pledged Collateral. The rights and powers conferred on the Bank by the Pledgor are expressly declared to be coupled with an interest and shall be irrevocable until all the Liabilities are paid and performed in full. A carbon, photographic, or other reproduction of a security agreement (including this Pledge Agreement) or a financing statement is sufficient as a financing statement.

**7. Miscellaneous.** This Pledge Agreement and the Pledged Collateral shall not be in any way affected by the extension of time or renewal of any of the Liabilities, the modification in any manner or the taking or release in whole or in part of any security therefor or the obligations of any endorsers, sureties, guarantors or other parties or the granting of any other indulgences to the Borrower or to the Pledgor. No termination of this Pledge Agreement shall be effective in any event until the Bank in its discretion determines that the Liabilities of the Borrower covered by this Pledge Agreement have been satisfied in full.

**8. Notices.** Except as otherwise specifically provided for herein, any notice, demand or communication hereunder shall be given in writing (including facsimile transmission or telex) and mailed or delivered to each party at its address set forth below, or, as to each party, at such other address as shall be designated by such party by a prior notice to the other party in accordance with the terms of this provision.

Any notice to the Bank shall be sent as follows:

Signature Bank
565 Fifth Avenue
New York, NY 10017
Attention: **ROSEANN MANOS**

Any notice to the Pledgor shall be sent as follows:

JOHN F BARRETT
333 W 56TH ST 10FG
NEW YORK NY 10019
Attention: JOHN F BARRETT

All notices hereunder shall be effective (i) five (5) business days after such notice is mailed, by registered or certified mail, postage prepaid (return receipt requested), (ii) upon delivery by hand, (iii) upon delivery if delivered by overnight courier (such delivery to be evidenced by the courier's records), and (iv) in the case of any notice or communication by telex or telecopy, on the date when sent.

9. **Joint and Several Obligations; Construction.** If more than one Pledgor has signed this Pledge Agreement, the obligations of the Pledgor are joint and several. The term "Pledgor" and all pronouns referring thereto as used herein shall be construed in the masculine, feminine, neuter or singular or plural as the context may require.

10. **Successors and Assigns.** This Pledge Agreement shall inure to the benefit of the Bank and its successors and assigns and shall bind the Pledgor and the successors, representatives, legal representatives and/or heirs and assigns of the Pledgor.

This Pledge Agreement has been executed by the Pledgor and the Bank as of the day and date written hereinbelow.

Print Individual or Corporate PLEDGOR's Name: JOHN F BARRETT

Required Signature: [signature]
Print Name of Signer: JOHN F BARRETT
Title: _____

DATE: 10-30-18

Required Signature: _____
Print Name of Signer: _____
Title: _____

DATE: _____

EXECUTED IN THE PRESENCE OF:
[signature]
WITNESS AS TO PLEDGOR

BANK:

SIGNATURE BANK
Required Signature: [signature] Roseann Manos
Print Name of Signer: ROSEANN MANOS
Title: GROUP DIRECTOR/SVP

Date: 10/30/19

EXECUTED IN THE PRESENCE OF:
[signature]
WITNESS AS TO BANK

**SEE EXHIBIT "A" ATTACHED HERETO, MADE A PART HEREOF AND INCORPORATED HEREIN BY REFERENCE.**

# EXHIBIT A

(Description of Pledged Collateral)

| I. Securities and Closely Held Capital Stock (Corporate) | | | |
|---|---|---|---|
| **Issuer** | **No. of Shares** | **Certificate No.** | **Cusip No.** |

| II. Securities (U. S. Government & Federal Agency Securities) | | | | | |
|---|---|---|---|---|---|
| **Description** | **Par Value** | **Cusip No.** | **Issue Date** | **Interest Rate** | **Maturity Date** |

| III. Certificates of Deposit | | | |
|---|---|---|---|
| **Account Number:** _____ | | | |
| **Issuer** | **Par Value** | **Interest Rate** | **Maturity Date** |

**IV. OTHER***

THAT CERTAIN COLLATERAL *IN ITS ENTIRETY* HELD IN A Money Market Account AT <u>SIGNATURE BANK</u> (NUMBER: ▮▮▮▮▮▮▮▮ IN THE SOLE NAME OF THE PLEDGOR.

*OR ANY AND ALL SUBSTITUTIONS AND/OR ADDITIONS ACCEPTABLE TO THE BANK IN THE BANK'S SOLE AND ABSOLUTE DISCRETION

THE COLLATERAL PLEDGED HEREIN SHALL REMAIN IN THE BANK'S POSSESSION AT ALL TIMES.

Pledgor's Initials: _[signature]_

Date: 10 - 30 - 18

4

600040-0913