UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In Re:                                                                  Chapter 11

    MEZZ57TH LLC                                          Case No.:  20-11316
    d/b/a John Barrett

                          Debtor.

-------------------------------------------------------X

# ORDER AUTHORIZING
# INTERIM USE OF CASH COLLATERAL

Upon the motion ("Cash Collateral Motion") of Mezz57th LLC ("Operating Debtor"), an above-captioned debtor and debtor-in-possession which seeks authority to, inter alia, use cash collateral in which lenders Lawrence F. Flick IV Flick ("Flick", Saw Investment Fund LLC ("Saw") and Jeffrey Sellers ("Sellers", and collectively with Flick and Saw, the "Lenders") have asserted a security interest, pursuant to 11 U.S.C. Sections 363(c)(2) and 361 and Federal Rules of Bankruptcy Procedure 4001; and a hearing having been held on June 11, 2020 (the "Interim Hearing"), and on the consent of Flick; and any or all objections to the Motion having been withdrawn, overruled or resolved, and upon the record taken at the Interim Hearing, and all of the pleadings heretofore filed in this proceeding, it is hereby found and determined as follows based on the representations made on the record by the parties at the Interim Hearing:

        A.        On May 29, 2020 (the "Petition Date"), the Operating Debtor, along with John Barrett Inc., filed a voluntary petition for relief pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code.  The Operating Debtor is operating its business as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code; and

        B.        On June 1, 2020, pursuant to 11 U.S.C. § 1183(a), the United States Trustee appointed Charles Persing as Subchapter V trustee for the Operating Debtor; and

C. Lenders and the Operating Debtor agree that Lenders are secured creditors of Operating Debtor with respect to certain obligations (the "Loans") which are evidenced by, without limitation: (a) that certain Security Agreement dated March 10, 2019 between the Operating Debtor and Lenders ("Security Agreement") pursuant to which the Operating Agreement granted Lenders a first lien and security interest in the Operating Debtor's inventory, accounts receivable, money, and the proceeds thereof; (b) a Promissory Note dated November 1, 2018 (the "Seller Note"), pursuant to which Operating Debtor promised to pay Seller the principal sum of $1,050,720, (c) a Promissory note dated July 15, 2019 (the "Saw Note") pursuant to which the Operating Debtor promised to pay Saw the principal amount of $400,000; (d) a Promissory Note dated May 29, 2019 (the "Flick $500,000 Note") pursuant to which the Operating Debtor promised to pay Flick the principal amount of $500,000 plus interest and other amounts stated therein; and (e) a Promissory Note dated September 23, 2019 (the "Flick $150,0000 Note") pursuant to which the Operating Debtor promised to pay Flick the principal amount of $150,000 plus interest and other amounts stated therein (the Seller Note, Saw Note, Flick $500,000 Note, the Flick $150,000 Note and the Security Agreement collectively referenced herein as the "Loan Agreements"); and

D. Lenders and Operating Debtor agree that any income, receipts or revenues received by Operating Debtor, constitute cash collateral of Lenders within the meaning of Section 363(a) of the Bankruptcy Code (the "Cash Collateral"); and

E. Operating Debtor provides luxury beauty salon, spa, and related services, and Operating Debtor's use of the Cash Collateral is essential to the continued operation of its business, and the preservation of its estate; and

F. Continued use of the Cash Collateral on an interim basis pending a final hearing is necessary to prevent immediate and irreparable harm to the Operating Debtor's estate in

that without authorization to use the Cash Collateral, the Operating Debtor's ability to sustain its operations and meet its current necessary and integral business obligations will be impossible; and

G. The value of Operating Debtor's estate will be maximized by the continuation of Operating Debtor as a going business, and the use of the Cash Collateral is essential to such operations; and

H. Flick consents to Operating Debtor's continued interim use of Cash Collateral on the terms set forth below;

NOW THEREFORE IT IS HEREBY ORDERED:

1. Operating Debtor is authorized to use Cash Collateral on an interim basis in accordance with the budget attached hereto (the "Initial Budget") pending the final hearing referenced below (the "Interim Period"), unless sooner terminated as provided herein.

2. Replacement Liens. In addition to any existing rights and interests of Lenders in the Cash Collateral and for the purpose of adequately protecting them from collateral diminution, Lenders are hereby granted replacement liens ("Replacement Liens") to the extent that said Lenders' liens in pre-petition Cash Collateral were valid, perfected and enforceable without determination herein as to the nature, extent and validity of said pre-petition liens and claims and to the extent of collateral diminution[1] occurs during the Chapter 11 case. The Replacement Liens shall be first and senior security interests and liens in favor of Lenders in all assets and properties of the Operating Debtor of any kind or nature, now existing or hereafter arising or acquired (other than causes of action under Chapter 5 of the Bankruptcy Code and any proceeds thereof) subject only to

---

[1] For purposes of this Order, "collateral diminution" shall mean any diminution in value of Lenders' interest in Operating Debtor's property as of the Petition Date by reason of Operating Debtor's use of Cash Collateral in accordance with this Order.

existing senior and valid and perfected liens, if any, on said property as of the Petition Date. The Replacement Liens are not currently subject to a "carve out", for purposes of this interim order, without prejudice to the rights of the Operating Debtor or other party in interest to seek imposition of a carve out in a final order approving the Cash Collateral Motion.

3. In addition to the above, as further adequate protection of Lenders' security interests in Cash Collateral, the claim which arises in favor of Lenders as a result of and to the extent of any diminution in value of Lenders' Collateral, if any, as the result of the Operating Debtor's use of Cash Collateral in accordance with any order of the Court, shall have priority in payment over any and all obligations of the Operating Debtor now in existence or hereinafter incurred by the Operating Debtor and over all administrative expenses of the kind specified in or allowable under sections 503(b), or 507(b) of the Bankruptcy Code, other than the fees owed to the United States Trustee under 28 U.S.C. § 1930, and interest, if any, under 37 U.S.C. § 3717.

4. <u>Use of Cash Collateral</u>. Operating Debtor shall not use, lease, sell or expend, directly or indirectly, any Cash Collateral, except as expressly provided for in this Order.

5. During the Interim Period, Operating Debtor shall be permitted, on an interim basis, to continue to use Cash Collateral in the ordinary course of business and in accordance with the Interim Budget, subject to the terms of this Order, and subject to a 10% variance for any expenses, collections and new billings. Budgeted expenses not paid in one week may be paid in a subsequent week.

6. <u>Reporting</u>. Within twenty (20) days after the end of each calendar month, Operating Debtor shall deliver to the Lenders, their counsel, and the Subchapter V Trustee: (i) copies of all financial and operational reports filed with the Bankruptcy Court, (ii) bank

statements for each of Operating Debtor DIP Accounts; and (iii) such other documentation as may be reasonably requested by the Lenders.

7. <u>Taxes</u>.  Operating Debtor shall timely pay all taxes and assessments for the post-petition period in respect of its business that are or hereafter become due and owing, the non-payment of which could result in the creation of a lien against the Lenders' Collateral or the property which is subject to Lenders' liens.  Evidence of Operating Debtor's tax payments shall be delivered to Lenders and Subchapter V Trustee, within a reasonable time after such tax payment is paid.

8. <u>Insurance</u>. Operating Debtor shall maintain all appropriate insurance, during the pendency of the case and shall provide proof of insurance to Lenders, the U.S. Trustee the Subchapter V Trustee, within three business days from the date of this Order.

9. <u>Bank Accounts</u>.  No funds generated from operations of Operating Debtor or from the use, sale or lease of any of the Lenders' Collateral shall be deposited in any bank account by Operating Debtor's except for Operating Debtor's DIP Accounts.

10. <u>Miscellaneous</u>.  The terms and provisions of this Order shall not be construed to prohibit Lenders from seeking any relief available to them under the Loan Agreements under the Bankruptcy Code, or under any other applicable law, nor shall they be deemed to be an express or implied agreement to refrain from or delay exercise of Lenders' rights to seek dismissal, lift stay or other relief during the term of this Order or otherwise, except in accordance with this Order.

11. Except as otherwise expressly provided in this Order, the terms and conditions of all the Loan Agreements shall remain in full force and effect, and the Lenders shall

retain all of its respective rights and remedies thereunder, subject to the provisions of the Bankruptcy Code, or other applicable law.

12. Operating Debtor is authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be necessary to implement the terms and conditions of this Order and the transactions described herein. The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated herein.

13. The provisions of this Order do not constitute, and shall not be deemed to constitute an admission by any Lender that its interests in its collateral are adequately protected. No delay or omission to exercise any right, power or remedy available to Lenders shall impair any such right, power or remedy, nor shall it be construed as a waiver of any of Lenders' rights, powers and remedies.

14. All rights of Lenders to seek additional adequate protection for Operating Debtor's use of Cash Collateral and other collateral, to file for relief from the automatic stay, to dismiss or assert any other right, cause of action or any other remedy with respect to the Operating Debtor whether in this bankruptcy case, or otherwise, are expressly reserved.

15. The provisions of this Order shall be binding upon, and inure to the benefit of the Lenders, the Operating Debtor, and their respective successors and assigns, including but not limited to, any Trustee or other fiduciary appointed as a legal representative of the Operating Debtors whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case or in connection with any other state or federal proceeding.

16. <u>Final Hearing</u>. The Court shall conduct a final hearing ("<u>Final Hearing</u>") on the relief requested in the Cash Collateral Motion on July 1, 2020 at 10:00 AM. Objections to the

final relief requested in the Cash Collateral Motion shall be made in writing, filed with the Bankruptcy Court at the Court's website www.nysb.uscourts.gov (log in and password required), with a copy delivered directly to the chambers of the Honorable Sean Lane, and served upon Ballon Stoll Bader & Nadler P.C., 729 Seventh Avenue, New York NY 10019 Attn: Vincent J. Roldan, Esq. so as to be received no later than seven (7) days prior to the Final Hearing.

Dated: June 16, 2020  /s/ *Sean H. Lane*
New York, New York  UNITED STATES BANKRUPTCY JUDGE

# Mezz 57th June Expenses

**Total as of June 3, 2020**               **$ 134,083.22**

| June Expenses | Amount | Notes |
|---|---:|---|
| First Insurance Funding | $ 17,118.56 | |
| John Barrett Salary | $ 16,000.00 | |
| Philadelphia Insurance | $ 13,677.75 | |
| The Hartford | $ 11,331.64 | |
| Kaybak | $ 9,600.00 | HVAC |
| Essential Employee Pay | $ 9,403.86 | (Gross Wages) |
| Utilities Deposit | $ 7,500.00 | Deposit |
| Great Hair | $ 7,100.00 | Hair |
| Salon Sterilization | $ 5,000.00 | (estimate) |
| Golden Door | $ 4,800.00 | Restructuring Firm |
| Verizon | $ 4,000.00 | Utility |
| Shu Uemura | $ 3,500.00 | Retail |
| ADP | $ 3,500.00 | Payroll |
| Tele-Verse | $ 3,000.00 | Telephone System |
| Republic Data | $ 2,500.00 | Telephone Operations |
| Hercules | $ 2,000.00 | Vent Cleaning/ Washing Machine Repair (estimate) |
| Imperial Dade (Burke) | $ 2,000.00 | Salon Supplies (Cleaning) |
| DGA | $ 1,731.11 | Security |
| Spectrum | $ 1,707.00 | Utility |
| IBCS | $ 1,595.00 | Spa Software System |
| TransitChek | $ 1,500.00 | Employee Transit Benefit |
| ITH,Inc. | $ 1,356.25 | Computer Consultants |
| BMW lease | $ 1,095.00 | Business Car |
| Microsoft | $ 750.00 | Office 365 Licenses |
| Google Mail | $ 700.00 | |
| MailChimp | $ 450.00 | |
| Wage Works | $ 366.00 | Cobra (March/April/May) |
| Quickbooks Enterprise | $ 275.00 | |
| 401K | $ 255.00 | (To be paid 7/1 PayDate for June Wages) |
| Adobe | $ 150.00 | |
| Quickbooks | $ 77.00 | |
| Shutterstock | $ 29.00 | |
| FedEx | $ 15.05 | |