BALLON STOLL BADER & NADLER, P.C.
729 Seventh Avenue
New York, NY 10019
Telephone:  (212) 575-7900
Facsimile:  (212) 764-5060
Vincent J. Roldan
vroldan@ballonstoll.com

*Proposed Attorneys for Mezz57th LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

| | |
|---|---|
| In Re: | Chapter 11 |
| MEZZ57TH LLC et al. | Case No.:  20-11316 |
| Debtors and<br>Debtors in Possession | (Jointly Administered) |

--------------------------------------------------------X

## MOTION FOR ENTRY OF AN
## ORDER (I) APPROVING RELIEF RELATED TO THE INTERIM
## BUDGET AND (II) GRANTING RELATED RELIEF

Mezz57th LLC, debtor and debtor in possession ("Operating Debtor"), by its proposed

attorneys Ballon Stoll Bader & Nadler, P.C., files this motion (the "Motion") for entry of an Order

(I) Approving Interim Relief Related To the Interim Budget and (II) Granting Related Relief, and

respectfully states as follows:

### Preliminary Statement

As set forth in its local rule affidavit, the Operating Debtor was well on its way with

restructuring its operations in early 2020.  Combined with key talent acquisitions, the Operating

Debtor was expecting 2020 would show increased revenue and profit.  The Covid-19 pandemic

intervened and caused the Operating Debtor to shut down on March 16, 2020.

When these cases were first filed, it was unclear when the Operating Debtor will re-open. On June 22, 2020, New York entered into "Phase 2" of the state's Covid-19 reopening plan. The Operating Debtor has re-opened its salon, but must comply with strict guidelines that will impact operations and impact the ability to generate revenue to pre-Covid levels.[1] In the midst of this uncertainty, the Operating Debtor needs to conserve cash for the benefit of all creditors.

Ultimately the Operating Debtor believes it will emerge from this Chapter 11 case as a reorganized debtor. Towards that end, the Operating Debtor is working with its working with its secured creditors and Subchapter V Trustee to ensure this case is successful. Its landlord MIP 57th Development Acquisition (the "Landlord") has apparently drawn on or potentially attempted to draw on the letter of credit, but it is unclear to what months the letter of credit proceeds are being applied. The Operating Debtor files the instant motion for relief related to its interim budget, which includes authority to temporarily cease making or delaying payments to the Landlord.[2]

## Jurisdiction and Venue

1.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§1408 and 1409.

2.      The statutory bases for the relief requested herein are §§ 105(a) and 365(d) title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1] See e.g.
https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/HairSalonsAndBarbershopMasterGuidance.pdf
[2] The Operating Debtor reserves the right to argue that any rent owing to the Landlord under section 365(d)(3) must be reasonable, in that it must be reduced to reflect the current market post-pandemic rate. See In re Palace Quality Servs. Indus., 283 B.R. 868 (Bankr. E.D. Mich. 2002). The Operating Debtor is aware of the decision in Pereira v. Rich Taubman Assocs., No. 10 Civ. 8429 (NRB), 2011 U.S. Dist. LEXIS 96466 (S.D.N.Y. Aug. 26, 2011) to the contrary.

**Background**

3. On May 29, 2020 (the "Petition Date"), the Operating Debtor, along with John Barrett Inc., filed a voluntary petition for relief pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code. The Operating Debtor is operating its business as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

4. On June 1, 2020, pursuant to 11 U.S.C. § 1183(a), the United States Trustee appointed Charles Persing as Subchapter V trustee for the Operating Debtor.

5. The Operating Debtor's business and facts precipitating the filing of the Operating Debtor's Chapter 11 proceeding is set forth in the Affidavit of John Barrett Pursuant To Local Bankruptcy Rule 1007-2 (the "Barrett Affidavit") filed on June 3, 2020. Those facts are incorporated herein by reference.

**Impact of COVID-19 on This Case**

6. As stated in the Barrett Affidavit, the Operating Debtor operates a high end hair salon (the "Salon") in midtown Manhattan. The Salon is the Operating Debtor's main asset and the Operating Debtor expended significant sums to build it out. It is loft-like space that has vast floor-to-ceiling windows that look out onto 57th Street with art, books, jewelry, and talented hair stylists. The lease with the Landlord (the "Lease") is a ten-year lease that terminates in December 2028 that currently calls for approximately $90,000 per month in rent.

7. From on or about March 16, 2020 until June 22, 2020, the Operating Debtor was not operating its business and did not pay rent during such time. The Operating Debtor attempted to negotiate a rent abatement with the Landlord's agent but was unsuccessful. The Operating Debtor believes that the Landlord is being unreasonable given the circumstances. New York City

continues to face the challenges from the COVID-19 pandemic, including the extended closures of the Salon, the significantly reduced occupancy capacity, and the customary services that are now forbidden. When combined with the vacancies in the neighborhood, it is a very different environment than what the Landlord assured the Salon would see.

8.     The Operating Debtor is currently operating with Paycheck Protection Program ("PPP") funds. It recently filed a motion to use cash collateral that shows that the Operating Debtor is mainly paying its property-related expenses (utilities and insurance), as well as stocking up for supplies for the business. The Operating Debtor's 30 day budget calls for about $150,000 in these necessary expenditures, all consistent with the PPP program.

9.     If the Operating Debtor was to pay rent to the Landlord, it would be an additional $90,000, or a 60% increase in expenditures which do not correspond to the benefit the Operating Debtor would receive even when open. It is doubtful that the Operating Debtor can return to 100% operations any time soon due to the laws and regulations imposed on it --- and even then it will be hampered by the vacancies in the neighborhood and the corresponding significant decrease in foot traffic. Looming large are the rising infections in Florida and elsewhere that have occurred upon reopening. Should infections rise in New York City, it is almost a certainty that there will be significant repercussions to the ongoing business and may even include being forced to shut down again.

10.     Accordingly, the Operating Debtor seeks authority to temporarily cease making these payments through September 25, 2020, without prejudice to the Operating Debtor's ability to request an additional extension. By this Motion, the Operating Debtor is not proposing nor seeking authority to not pay these amounts ever, but rather to delay payment such that to the extent applicable and allowable, it shall become an Administrative Claim in this chapter 11 case.

11.     The Operating Debtor submits that any harm to the Landlord could be mitigated by the opportunity to conduct business with the Operating Debtor as a reorganized entity moving forward, rather than having an empty commercial mezzanine-level space to rent that may be in limited demand due to the Covid-19 Pandemic that continue to ravage New York City.

## Discussion

A.     Section 105 Relief

12.     Section 105(a) of the Bankruptcy Code provides, in relevant part, that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).  Section 105 of the Bankruptcy Code provides the bankruptcy court with broad equitable powers. As one court articulated, section 105 is "an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case. The basic purpose of § 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction." Davis v. Davis (In re Davis), 170 F.3d 475, 492 (5th Cir. 1999) (citing 2 L. King, Collier On Bankruptcy § 105.01, at 105–3 (1996)). The Supreme Court has recognized that bankruptcy courts, as courts of equity, have the authority to modify creditor-debtor relationships. See United States v. Energy Res. Co., 495 U.S. 545, 549 (1990) ("The Code also states that bankruptcy courts may 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions' of the Code. § 105(a). These statutory directives are consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships."). Furthermore, a court's decision to exercise its equitable powers under section 105(a) is discretionary. In re Charles & Lillian Brown's Hotel, Inc., 93 B.R. 49, 54 (Bankr. S.D.N.Y. 1988) (superseded on other grounds) (noting that "the court's utilization of its powers

under" under section 105(a) is discretionary). But, section 105 may not be used in a manner that is inconsistent with other provisions of the Bankruptcy Code. See In re Gurney, 192 B.R. 529, 537 (B.A.P. 9th Cir. 1996) (noting that section 105 "may be exercised only in a manner not inconsistent with the provisions of the Code").

13.     Relief similar to the relief granted herein has been granted in the Pier 1 and Modell's retail cases. See In re Pier 1 Imports, Inc., et al., Bankr. E.D. Va. Case No. 20-30805 Docket No. 493 dated April 6, 2020; In re Modell's Sporting Goods, Inc., Bankr. D. N.J. Case No. 20-14179 Docket No. 166 dated March 27, 2020.  Copies of the orders in Pier 1 and Modell's are attached hereto as Exhibit A.

14.     The relief requested herein is similar to other relief granted under section 105 and other sections of the Bankruptcy Code. Courts often rely on section 105 for the authority to protect and effectively administer estate assets. See 2 Collier on Bankruptcy ¶ 105.02 (16th ed. 2020) ("It has also been used as the basis for staying actions by third parties against avoiding powers actions prior to the time the estate decides to pursue or abandon them."); see also In re Ionosphere Clubs, Inc., 156 B.R. 414, 436 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994) ("In order to allow the Trustee to assert actions which are property of the debtor's estate for the benefit of the estate as a whole, other claimants may be prohibited by the Bankruptcy Court from pursuing such actions under 11 U.S.C. § 105(a)."). Section 105 is often the basis for "tolling" certain time periods under the Bankruptcy Code. See In re Richards, 994 F.2d 763, 765 (10th Cir. 1993) ("By suspending the 240–day period during Richards' first bankruptcy, the Bankruptcy Court ensured that the government was not deprived of the full benefit of the 240 days within which it could pursue its post-assessment collection remedies. This use of the equitable authority in 11 U.S.C. § 105(a) is not inconsistent with any specific provision of the Bankruptcy Code, and, in our view, is consistent

with the underlying philosophy of the Bankruptcy Code."). In addition, section 305 provides for a "full suspension" of a chapter 11 proceeding if it would benefit both the interests of the debtor and its creditors. See 11 U.S.C. § 305(a); In re Monitor Single Lift I, Ltd., 381 B.R. 455, 462–63 (Bankr. S.D.N.Y. 2008) (citations omitted).

15.　　Here, the relief requested by the Operating Debtor falls squarely within the equitable powers of section 105.  Instituting a "breathing spell" for the Operating Debtor during this tumultuous financial period by allowing for the modification of payment terms is the type of relief the bankruptcy process was designed provide. See In re Banks, 577 B.R. 659, 664–65 (Bankr. E.D. Va. 2017) (noting that the automatic stay provides the debtor with a "breathing spell" from its creditors); see Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC, 460 B.R. 106, 120 (Bankr. S.D.N.Y. 2011) (quoting Solow v. Kalikow (In re Kalikow), 602 F.3d 82 (2d Cir. 2010) ("bankruptcy courts are empowered to utilize their equitable powers under section 105 where appropriate "'to facilitate the implementation of other Bankruptcy Code provisions.'"). While the Operating Debtor is aware that the automatic stay applies to prepetition actions, in extraordinary times such as these, section 105 permits the Court to extend the principles of the Bankruptcy Code to postpetition case administration. See 11 U.S.C. § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent the abuse of process.").

16.　　The relief requested is necessary for the Operating Debtor to maximize the value of its assets. The Operating Debtor's budget includes only those which are absolutely necessary. As set forth above, requiring the Operating Debtor to pay rent to the Landlord would quickly deplete the Operating Debtor's PPP funds, perhaps before the Operating Debtor is even able to

pay employees.  The only conclusion is, the relief requested herein provides the Operating Debtor

with the best possible chance of emerging from Chapter 11 in a manner that will benefit of all

creditors.[3]

B. Cause Exists to Suspend Lease Payments Pursuant to the Terms of the Lease, Takings Doctrine, Doctrine of Intervening Impossibility, and the Frustration of Purpose Doctrine

i. Takings Doctrine

17.    In addition, the Court should find that Operating Debtor is entitled to an abatement

of rent commensurate with the reduced utility of its lease premises based on the terms of the

Operating Debtor's lease. The eminent domain provision of the Lease provides, in relevant part:

> If only a part of the Demised Premises shall be so acquired or condemned then, except as provided in this Section, this Lease and the Demised Term shall continue in force and effect but, from and after the date of the vesting of title the Fixed Rent and Tenant's Proportionate Share shall be reduced in the proportion which the area of the part of the Demised Premises so acquired or condemned bears to the total area of the Demised Premises immediately prior to such acquisition or condemnation …

Lease para. 10.01. (emphasis added).

18.    The governmental response to the COVID-19 outbreak constitutes an execution of

police powers for the improvement of the public condition by limiting the spread of a pandemic.

The general rule as to whether an exercise of such police powers constitutes a taking is that "while

property may be regulated to a certain extent, if regulation goes too far it will be recognized as a

---

[3] Moreover, section 365(d)(3) of the Bankruptcy Code authorizes the Court to extend the Operating Debtor's obligations under their unexpired leases during the first 60 days of these chapter 11 cases for cause. See 11 U.S.C. § 365(d)(3). The Bankruptcy Code does not define "cause," and determining whether to extend these obligations is within the Court's discretion. See In re Pac-West Telecomm, Inc., 377 B.R. 119, 126 (Bankr. D. Del. 2007) (noting that "simply being in bankruptcy cannot constitute 'cause'" on grounds that an extension would be automatic rather than discretionary). A court may look to a "specific cause" articulated by a debtor "applicable legal precedent." Id. In addition, section 105 authorizes the Court to "toll" certain time periods if such tolling is "consistent with the underlying philosophy of the Bankruptcy Code." See In re Richards, 994 F.2d at 765. The Operating Debtor submits that the multiple state-mandated store closures as a result of the COVID-19 pandemic satisfies the "cause" requirement of section 365(d)(3).

taking." <u>Pennsylvania Coal Co. v. Mahon</u>, 260 U.S. 393, 415 (1922). In Pennsylvania Coal, the Supreme Court held that a regulation rendering an activity commercially impracticable has very nearly the same effect for constitutional purposes as appropriating or destroying it. 260 U.S. at 414. As was the case in <u>Pennsylvania Coal</u>, the regulatory orders resulting in the closing of the Operating Debtor's stores has rendered the Operating Debtor's activity of operating the Salon commercially impracticable and has deprived the Operating Debtor of the right to operate. Accordingly, because the governmental regulation in question amounts to a taking of the Salon, the Operating Debtor is entitled under the terms of the Lease to an abatement of rent commensurate with the reduced utility of the leased premise.

     ii.    <u>Impossibility</u>.

19.    In addition to the relief the Operating Debtor is entitled to under the Lease, the Operating Debtor is entitled to an abatement of rent and to suspend its obligations under the Lease on the equitable grounds of supervening impossibility. The doctrine of supervening impossibility excuses performance by a party under a contract when such "performance is made impracticable without his fault by the occurrence of an event the nonoccurrence of which was a basis assumption on which the contract was made," unless the language of the contract indicates the contrary. <u>See</u> Restatement (Second) of Contracts § 261(1981); <u>see</u> <u>Serdarevic v. Centex Homes, LLC</u>, 2012 U.S. Dist. LEXIS 134349, at *39-40 (S.D.N.Y. Sep. 5, 2012). Section 264 provides that a government regulation may qualify as an event rendering the duty of a promisor to perform impracticable: "If the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was a basic assumption on which the contract was made." <u>Serdarevic v. Centex Homes</u>, 2012 U.S. Dist. LEXIS 134349, at *39-40. Impracticability of performance is an "objective" standard. <u>See</u> §

261, comment e ("This Section recognizes that if the performance remains practicable and it is merely beyond the party's capacity to render it, he is ordinary not discharged[.]").

20.     The Operating Debtor's request to suspend its rental payments is an applicable defense to breach of contract under the doctrine of impossibility. First, the state and local government orders mandating store closures to encourage social distancing and limit the spread of COVID-19 are "intervening acts." <u>See</u> Restatement (Second) of Contracts §§ 261, 264. Second, the Operating Debtor's duty is made impracticable by having to comply with Covid-19 regulations. Finally, it is both impracticable and impossible for the Operating Debtor to perform under the Lease as a result of the guidelines that accompany most of these governmental regulations that now limit the Salon's operations.

21.     Based on the foregoing, the Operating Debtor satisfies the factors of the doctrine, in that the governmental response to the Covid-19 pandemic is a supervening impossibility.

    iii.   <u>Frustration of Purpose.</u>

22.     The doctrine of frustration of purpose is a similar equitable doctrine and excuses a party's performance under a contract when a party can establish the following factors: first, the frustrated purpose "must have been a principal purpose of that party" and must have been so within the understanding of both parties to the contract; second, the frustration "must be severe that it is not to be regarded as within the risks assumed . . . under the contract"; third, "the non-occurrence of the frustrating event must have been a basic assumption [on which the contract was made]." <u>See</u> Restatement (Second) of Contracts § 265 (1981); <u>In re Stock Exchs. Options Trading Antitrust Litig.</u>, 2005 U.S. Dist. LEXIS 13734, at *35-36 (S.D.N.Y. July 8, 2005) (citing to Restatement (Second) of Contracts § 265); <u>Axginc Corp. v. Plaza Automall, Ltd.</u>, 2017 U.S. Dist. LEXIS 227928, at *25 (E.D.N.Y. Feb. 15, 2017) ("Under New York law, the doctrine of . . . frustration

of purpose[] discharges a party's duties to perform under a contract where 'an unforeseen event has occurred, which, in the context of the entire transaction, destroys the underlying reasons for performing the contract, even though performance is possible.'").

23.     Here, the Operating Debtor's request to suspend its rental payments is also an applicable defense to breach of contract under the doctrine of frustration of purpose. First, the principal purpose of the Operating Debtor in entering into its Salon is the operation of the premises as an upscale beauty salon and related "permitted uses". See Lease para. 2.01. There could be no other understanding between the parties as to the Operating Debtor's principal purpose.

24.     Second, the severe frustration of purpose associated with government-ordered store closure brought about by an unprecedented pandemic with global reach could neither have been anticipated in contracting nor regarded as assumed as a risk by either party to Lease.

25.     Third, the non-occurrence of a government-ordered halt to nonessential business operation (or related strict regulations relating to operations after re-opening) was necessarily a basic assumption of the Lease in that the purpose of the Lease is the operation of a business the government has since deemed nonessential.

26.     Accordingly, the Operating Debtor satisfies the factors the doctrine of frustration of purpose in that the Operating Debtor is not able to operate the Salon at full capacity.

## Conclusion

27.     For these foregoing reasons, the Operating Debtor respectfully requests the Court to enter an Order granting the relief requested herein. The Operating Debtor believes that such relief is absolutely vital to the Operating Debtor's ability to reorganize.

**Notice**

28.    Service of notice of this Motion will be made by mail on (i) the Office of the United States Trustee for the Southern District of New York, (ii) all parties having requested notices in the case, (iii) the Lenders, (iv) the Operating Debtor's twenty largest creditors (including the Landlord), and (v) the Subchapter V Trustee.  The Operating Debtor submits that no other or further notice need be provided.

**WHEREFORE**, Operating Debtor respectfully requests entry of an Order granting the relief requested herein together with such other and further relief as is just and proper under the circumstances.

Dated:  New York, New York
         June 23, 2020

Respectfully submitted,

BALLON STOLL BADER & NADLER, P.C.

By:____/s/ Vincent J. Roldan_____
       Vincent J. Roldan (VR 7450)
*Proposed attorneys for Operating Debtor*
729 Seventh Avenue – 17th Floor
New York, NY 10019
212.575-7900
Fax 212.764-5060
www.ballonstoll.com