**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Michael D. Sirota, Esq.
msirota@coleschotz.com
David M. Bass, Esq.
dbass@coleschotz.com
Felice R. Yudkin, Esq.
fyudkin@coleschotz.com

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| MODELL'S SPORTING GOODS, INC., *et al.,* | Case No. 20-14179 (VFP) |
| Debtors.[1] | Jointly Administered |

**DEBTORS' VERIFIED APPLICATION IN SUPPORT OF EMERGENCY**
**MOTION FOR ENTRY OF AN ORDER TEMPORARILY SUSPENDING**
**THEIR CHAPTER 11 CASES PURSUANT TO 11 U.S.C. §§ 105 AND 305**

Modell's Sporting Goods, Inc. and its subsidiaries, as debtors and debtors in possession

in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), by and through their

undersigned proposed counsel, submit this verified application (the "**Application**") pursuant to

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: Modell's Sporting Goods, Inc. (9418), Modell's II, Inc. (9422), Modell's NY II, Inc. (9434), Modell's NJ II, Inc. (9438), Modell's PA II, Inc. (9426), Modell's Maryland II, Inc. (9437), Modell's VA II, Inc. (9428), Modell's DE II, Inc. (9423), Modell's DC II, Inc. (9417), Modell's CT II, Inc. (7556), MSG Licensing, Inc. (8971), Modell's NH, Inc. (4219), Modell's Massachusetts, Inc. (6965) and Modell's Online, Inc. (2893). The Debtors' corporate headquarters is located at 498 Seventh Avenue, 20th Floor, New York, New York 10018.

sections 105 and 305 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule

1017 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") file this

Application to suspend their chapter 11 cases in their entireties.  In support of the Application,

the Debtors respectfully represent as follows:

## I.   <u>JURISDICTION</u>

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§

157(a)-(b) and 1334(b) the *Standing Order of Reference to the Bankruptcy Court Under Title 11*

*of the United States District Court for the District of New Jersey, dated September 18, 2012*

(Simandle, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The bases for the relief requested herein are sections 105 and 305 of title 11 of the

United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**") and Rule 1017 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## II.   <u>PRELIMINARY STATEMENT</u>

3.      The unprecedented, exponential spread of Coronavirus disease COVID-19

("**COVID-19**") throughout the United States over the course of the last week, along with the

resulting, state-imposed limitations and prohibitions on non-essential retail operations, has forced

the Debtors to re-evaluate the short-term trajectory of their chapter 11 cases.  The cornerstone of

these cases is the liquidation of the Debtors' 134 stores and e-commerce site through store

closing sales.  Notwithstanding the Debtors' best-laid plans, COVID-19 has prevented the

Debtors from conducting the robust liquidation sales that seemed possible just one week ago; it

has left the Debtors with no choice but to temporarily "mothball" their operations to preserve

value, with the hope that they can recommence operations in the near future and successfully

liquidate their inventory for the benefit of all parties-in-interest.

4.      In order to mothball their operations and abide by their social and ethical duties to

promote social distancing, the Debtors seek a temporary suspension of all deadlines and

activities in their chapter 11 cases, for a period of up to sixty days, pursuant to section 305 of the

Bankruptcy Code (as defined in more detail below, the "**Bankruptcy Suspension**"), without

prejudice to their right to seek additional time.  Critically, the Debtors seek to defer payment of

all expenses other than those that are absolutely essential, as outlined in their Modified Budget

(defined below).  Moreover, as part of the Bankruptcy Suspension, the Debtors have instituted or

intend to immediately institute an Operational Suspension (defined below), which will entail,

among other things:

> a.      The cessation of operations, including Store Closing Sales (defined below), at all 134 of their retail stores as well as fulfillment of orders on their e-commerce site;
>
> b.      The termination of store-level and distribution center employees; and
>
> c.      The cessation of all in-person operations at their corporate headquarters and termination most corporate employees, leaving in place a skeleton crew of essential employees to effectuate critical human relations, finance, and infrastructure technology functions during the Operational Suspension.

5.      The Debtors, along with their professionals, have developed a plan to

reoperationalize after COVID-19 abates and believe that the breathing spell provided by the

Bankruptcy Suspension is in the best interests of their estates and all creditors as it will allow the

Debtors, in time, to maximize the value of their inventory and leasehold interests.

6.      The Debtors recognize that all parties are suffering during these uncertain times.

Nevertheless, the Debtors believe that the Bankruptcy Suspension will inure to the benefit of all

parties such that it is warranted pursuant to section 305 of the Bankruptcy Code.

### III.    BACKGROUND

a.    The Chapter 11 Cases

7.    On March 11, 2020 (the "**Petition Date**"), each of the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

8.    The Debtors' cases are being jointly administered under lead Case No. 20-14179 pursuant to Bankruptcy Rule 1015 [Docket No. 88].

9.    Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert J. Duffy in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 24] (the "**First Day Declaration**").

10.    At the commencement of these cases, the Debtors operated 134 stores in ten states plus the District of Columbia.  Prior to the Petition Date, the Debtors, along with their counsel, Cole Schotz P.C. ("**Cole Schotz**"), crisis managers, Berkeley Research Group, LLC, liquidation consultant, Tiger Capital Group, LLC ("**Tiger**"), and real estate consultant and advisors, A&G Realty Partners, LLC (**A&G**), modeled and analyzed the Debtors' financial performance and lease portfolio to determine how best to maximize the value of the Debtors' assets.

11.    As set forth in the First Day Declaration, the Debtors filed these chapter 11 cases with the intention of liquidating their inventory through store closing sales (the "**Store Closing Sales**") conducted with the assistance of Tiger, paying off their lenders by mid-April, and using the remaining proceeds of their Store Closing Sales to wind their operations and provide a

4

distribution to creditors.  The Debtors' intended to effectuate this plan through the consensual use of cash collateral.

12.      In furtherance thereof, on the Petition Date, the Debtors filed, among other things:

a.      a Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Approving the Implementation of Customary Store Bonus Program and Payments to Non-Insiders Thereunder [Docket No. 8] (the "**Store Closing Motion**");

b.      a Motion for Entry of an Order Authorizing and Approving Procedures for Rejection of Executory Contracts and Unexpired Leases [Docket No. 9] (the "**Rejection Procedures Motion**"); and

c.      a Motion for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Affording Adequate Protection; (II) Modifying Automatic Stay; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief [Docket No. 23] (the "**Cash Collateral Motion**").

13.      On March 13, 2020 at 10:00 a.m., the Court held a hearing (the "**First Day Hearing**") at which it granted, among other things, the Store Closing Motion, the Rejection Procedures Motion, and the Cash Collateral Motion.  *See* Docket Nos. 63, 68, and 66, respectively.

14.      As set forth on the record at the First Day Hearing, at that time, the Debtors anticipated that the Store Closing Sales would be substantially complete by April 30, 2020 and that the Debtors would avail themselves of the rejection procedures described in the Rejection Procedures Motion to relieve themselves of certain lease obligations prior to paying May 1 rent. The Debtors intended (and intend) to assume and assign other leases with the assistance of A&G.

15.      Thereafter, on March 18, 2020, the Debtors filed

a.      an Application for Entry of an Order Authorizing the Employment and Retention of Cole Schotz P.C. as Bnkruptcy Counsel to the Debtors *Nunc Pro Tunc* to the Petition Date [Docket No. 99]; and

5

b.    an Application for Entry of an Order Authorizing the Debtors to Retain A&G Realty Partners, LLC as a Real Estate Consultant and Advisor Nu*nc Pro Tunc* to the Petition Date [Docket No. 100].

16.    On March 20, 2020, the Debtors filed a Motion for an Administrative Fee Order Establishing Procedures for the Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court [Docket No. 109].

**b.    The Impact of COVID-19 on the Store Closing Sales**

17.    Since the First Day Hearing, the exponential spread of COVID-19 has wreaked economic and social havoc across the country.  On the afternoon of March 13, 2020, President Trump declared COVID-19 a national emergency.  Pres. Proc. No. 9994, 85 F.R. 15337, 2020 WL 1272563.  Separately, most of the states in which the Debtors operate have also declared states of emergency.

18.    The various states in which the Debtors operate have also imposed various restrictions on retail businesses which have impacted the Debtors' ability to conduct Store Closing Sales.  First, at 2:00 p.m. on March 16, 2020, the state of Pennsylvania ordered the closure of all non-essential stores, bars, and restaurants, effective at midnight that same day, thus impacting the Debtors' Store Closing projections at the Debtors' 17 Pennsylvania stores.  *See* WPXI.com, TIMELINE: Pennsylvania coronavirus updates March 16, March 16, 2020, available at https://www.wpxi.com/news/top-stories/live-updates-coronavirus-pennsylvania-what-you-need-know-monday/DOARLQQXDVHSZHYF2BN77EMXIQ/.  Thereafter, several of the Debtors' landlords implemented modified store hours while others forced the Debtors to close stores, further inhibiting the Store Closing Sales.

19.    More recently, other states in which the Debtors operate have ordered the closure or drastic limitation of "non-essential" business functions, again restricting the Debtors' ability to conduct Store Closing Sales.  *See, e.g.*, Order of the Governor of the Commonwealth of

6

Pennsylvania Regarding the Closure of All Businesses that Are Not Life Sustaining, signed by Gov. Tom Wolf (PA) on March 19, 2020 (closing all non-life-sustaining businesses); N.Y. Exec. Order 202.8 (Mar. 20, 2020) (directing 100% closure of all non-essential business, including retail business, state-wide); Conn. Exec. Order 7H (Mar. 20, 2020) (requiring non-essential businesses to reduce their in-person workforces at any workplace locations by 100% effective March 23, 2020 at 8:00 p.m.); N.J. Exec. Order 107 (Mar. 21, 2020) (suspending all non-essential retail businesses state-wide); Fourth Modification of the Declaration of a State of Emergency for the State of Delaware Due to a Public Health Threat (Mar. 22, 2020) (directing 100% closure of all non-essential business state-wide, effective March 24, 2020 at 8:00 a.m.); Md. Exec. Order 20-03-23-01 (March 23, 2020) (directing 100% closure of all non-essential business state-wide); Exec. Order 53 (March 23, 2020) (limiting operations at non-essential retail businesses to no more than ten patrons at a time and requiring such establishments to either "adhere to . . . proper social distancing requirements" or to close, effective March 24, 2020 at 11:59 p.m.); Mass. Order Assuring Continued Operation of Essential Services in the Commonwealth, Closing Certain Workplaces and Prohibiting Gatherings of More Than 10 People (Mar. 23, 2020) (directing 100% closure of all non-essential business state-wide, effective March 25, 2020 at 12:00 noon).  At this time, nearly all of the Debtors' stores have been impacted by these restrictions, modified hours, and closures.

20.     Notwithstanding the careful pre-petition planning and modeling of the Debtors and their advisors, in the past week and a half, the Debtors' situation has changed drastically as a result of COVID-19.  Given the restrictions on operations at the Store Closing Sales, on March 20, 2020, the Debtors made the difficult decision to cease operations and terminate the majority of their employees.

21.     In light of the current climate, the Debtors have worked round-the-clock with their advisors to create new models and a new go-forward plan which they believe will enable them to maximize value for all creditors.  Specifically, the Debtors believe it would be in the best interests of their creditors and all parties-in-interest to suspend business operations (the "**Operational Suspension**") on the following terms:

a.     To the extent they have not already done so, the Debtors shall immediately (i) cease operations, including Store Closing Sales, at all 134 of their retail stores as well as fulfillment of orders on the e-commerce site, (ii) terminate store-level and distribution center employees, without severance, and (iii) cease all in-person operations at their corporate headquarters and terminate most corporate employees, without severance. The Debtors hope to rehire certain of their terminated employees to conduct Store Closing Sales when they reoperationalize.

b.     The Debtors intend to continue to employ certain critical employees responsible for human relations, finance, and infrastructure technology functions during the Operational Suspension.  Without the continuation of these functions, the Debtors would be unable to reoperationalize at a later date.[2]

c.     The Debtors intend to use cash collateral, with the consent of their pre-petition lenders, to pay certain critical expenses, including their remaining employees, utilities, insurance, and trust fund taxes, pursuant to a modified budget (the "**Modified Budget**"), which is a subset of the budget previously approved by the Court.[3]

22.     The Modified Budget and the Operational Suspension were designed to enable the Debtors to pay essential expenses so that the Debtors can reoperationalize and complete the Store Closing Sales as economically and efficiently as possible.

23.     In order to reap the benefits of the Operational Suspension, the Debtors must suspend their bankruptcy cases (the "**Bankruptcy Suspension**") on the following terms:

---

[2] The Debtors' Chief Executive Officer, Mitchell Modell, has agreed to defer his compensation during the Operational Suspension.

[3] A copy of the modified budget is attached hereto as **Exhibit A**.  The payments set therein have been approved of by the Debtors' pre-petition lenders.

8

a.    The Debtors seek entry of an order authorizing them to implement the Operational Suspension, to the extent any of the terms thereof conflict with relief previously ordered by the Court or their duties as debtors in possession.

b.    In order to avoid the accrual of administrative costs during the Bankruptcy Suspension, the Debtors seek entry of an Order (i) extending all deadlines that would otherwise occur during the Bankruptcy Suspension until the twenty-first day following the termination thereof and (ii) barring any party from seeking relief during the Bankruptcy Suspension.

c.    The Debtors also seek entry of an Order deferring the payment of all expenses other than those essential expenses set forth in the Modified Budget.

d.    In addition, the Debtors seek entry of an Order confirming that the automatic stay shall remain in full force and effect during the pendency of the Bankruptcy Suspension in order to ensure the equal treatment of creditors and the preservation of estate assets.

e.    Finally, the Debtors seek entry of an Order conditionally approving the retentions of Cole Schotz and A&G.  During the Bankruptcy Suspension, the Debtors' professionals shall provide only such services as are essential to effectuate the Operational Suspension and the Bankruptcy Suspension.[4]

24.    The Bankruptcy Suspension was designed to streamline the Debtors' costs during the period of thereof in order to safeguard the Debtors' prospects of conducting successful Store Closing Sales after the imminent threat of COVID-19 has subsided.

## IV.    **RELIEF REQUESTED**

25.    The Debtors seek entry of an Order approving the Operational Suspension and the Bankruptcy Suspension and immediately suspending these chapter 11 cases for up to sixty days,

---

[4] The Debtors propose that these professionals will draw on their respective retainers but not be obligated to file and serve monthly fee statements or interim compensation applications during the Bankruptcy Suspension. Notwithstanding the foregoing, (i) at least five business days prior to making any such draw, a professional shall serve a statement reflecting the number of hours worked and amount billed by such professional, broken down by timekeeper, on the Debtors' pre-petition lenders and the Office of the United States Trustee for Region 3 and (ii) any funds the professionals draw against their retainers during the Bankruptcy Suspension shall, of course, remain subject to the entry of a final order approving the award of such compensation.  "[I]nterim allowances are always subject to the court's re-examination and adjustment during the course of the case as all expenses of administration must receive the court's final scrutiny and approval." *Stable Mews Assocs. v. Togut*, 778 F.2d 121, 123 n.3 (2d Cir. 1985) (quoting 2 Collier on Bankruptcy ¶ 331.03 at 331-9 (15th ed. 1985)).

55008/0002-20051549v2

pursuant to sections 105 and 305 of the Bankruptcy Code, without prejudice to the Debtors' right

to seek additional time.

## V.    BASIS FOR RELIEF REQUESTED

### A.    The Bankruptcy Suspension Is Authorized Pursuant to Section 305 of the Bankruptcy Code As It Is in the Best Interests of the Debtors and Their Creditors

26.    Section 305(a)(1) of the Bankruptcy Code permits the Court, "after notice and a

hearing," to "suspend all proceedings in a case under this title, at any time if—(1) the interests of

creditors and the debtor would be better served by such dismissal or suspension."  Suspension of

chapter 11 case is considered an "extraordinary remedy" and the movant bears the burden of

proving that "the interests of the debtor and its creditors would benefit from . . . suspension of

proceedings under § 305(a)(1)."  *In re Monitor Single Lift I, Ltd.,* 381 B.R. 455, 462–63 (Bankr.

S.D.N.Y. 2008) (citations omitted); *see In re Biolitec, Inc.*, 528 B.R. 261, 267, n.9 (Bankr. D.N.J.

2014) ("Although section 305(a) applies to voluntary cases, because a dismissal pursuant to this

section is appealable only to the district court or a bankruptcy appellate panel, it is considered an

'extraordinary remedy' that should be granted only if it is shown that both the debtor and its

creditors would be better served" by such relief) (internal marks omitted) (citing, *inter alia*, *In re*

*Monitor Single Lift*).  The decision to suspend a chapter 11 case is made on a case-by-case basis.

*Monitor Single Lift*, 381 B.R. at 464.

27.    The relief afforded by section 305 "is extremely broad; the court may either

dismiss the case or, in the alternative, suspend all proceedings within the case . . . . As explained

[by Collier on Bankruptcy]: if 'a party . . . seeks suspension of all proceedings within a

case, section 305(a) should be invoked.'"  *Graham v. Yoder Mach. Sales (In re Weldon F. Stump*

*& Co.)*, 373 B.R. 823, 826 n.1 (Bankr. N.D. Ohio 2007) (citing 2 Collier on Bankruptcy P

305.01 [1] (15th ed. rev. 2005)).  "Based on the case law and the purpose of § 305, . . . the

10

contours of suspension may be fashioned by a bankruptcy court to fit the needs of the case." *In re Picacho Hills Util. Co., Inc.*, Case No. 13-10742 TL7, 2017 WL 1067754, at *6 (Bankr. D.N.M. Mar. 21, 2017) (citing, *inter alia*, *In re Compania de Alimentos Fargo,* 376 B.R. 427, 440 (Bankr. S.D.N.Y. 2007) (implying in dicta that a section 305 suspension may not terminate section 362's automatic stay)).

28.    Courts have invoked section 305's powers to suspend a case in a variety of unique circumstances.[5]  For example, in *In re Milestone Educ. Inst.*, 167 B.R. 716 (Bankr. D. Mass. 1994), a bankruptcy court *sua sponte* suspended "all activity" in a chapter 11 case to allow a state court to address novel issues of receivership law.  *Id.* at 724.  The court noted that the suspension would "preserve the bankruptcy petition filing date for purposes of bringing preference actions" which was the stated purpose of the chapter 11 filing, with the aim of "increas[ing] the amount of money available to distribute to [the debtor's] creditors.  *Id.* at 718, 724.  In that case, the court noted that the harm of a delayed distribution was "outweighed by the salutary effect" of the suspension.  *Id.* at 724.

29.    In considering whether to suspend a case pursuant to section 305, courts consider various factors.  *See, e.g.*, *In re Zais Inv. Grade Ltd. VII,* 455 B.R. 839, 846 (Bankr. D.N.J. 2011) (citing *Monitor Single Lift* factors addressing two-party disputes); *In re MicroBilt Corp.*, 484 B.R. 56, 66 (Bankr. D.N.J. 2012) (considering abstention under 28 U.S.C. § 1334(d) and 11 U.S.C. § 305(a), citing a different set of factors addressing two-party disputes, and abstaining

---

[5] Although the decision to suspend a case is generally made in the context of a two-party disputes and involuntary bankruptcy proceedings, "nowhere in the text of § 305(a)(1) or in its legislative history did Congress specifically limit the basis for a § 305(a)(1) motion to involuntary cases commenced by creditors to gain leverage in out-of-court negotiations."  *Monitor Single Lift*, 381 B.R. at 463.  In fact, the *Monitor Single Lift* court noted that "[t]he legislative history's reference to this fact-pattern only as an 'example' of a basis for abstaining under § 305(a)(1) validates this broader view of § 305(a)(1)'s application."  *Id.*

55008/0002-20051549v2

from adjudicating certain claims as in the best interests of the parties and the court).  Regardless

of the factors courts consider, "[a]s noted in the statute, the overriding considerations are, of

course, the interests of creditors and the debtor[s]."  *In re Gabriel Techs. Corp.*, Case No. 13-

30341, 2013 WL 5550391, at *4-*5 (Bankr. N.D. Cal. Oct. 7, 2013) (citing the *Monitor Single

Lift* factors).

30.      Where parties disagree as to whether suspension is in the best interests of all

parties, the "court does not count votes to decide the issue but weighs the competing interests of

the various creditor constituencies and the Debtor, and then appl[ies] the applicable factors to the

peculiar circumstances of an[] individual case, exercise[ing] its sound discretion to make a

decision for or against suspension."  *Id.* at *5 (suspending a chapter 11 case in light of the fact

that "the overwhelming interests of creditors generally support[ed]" suspension and in spite of

the fact that a litigation counterparty was "oppose[d] any disposition under § 305")

31.      The Debtors respectfully submit that, in spite of the fact that suspension is an

"extraordinary remedy," approval of the Bankruptcy Suspension is appropriate as it is in the best

interests of the Debtors and their creditors during these unprecedented times.  *See* 11 U.S.C.

§ 305.  Specifically, the "contours" of the Bankruptcy Suspension have been "fashioned to suit

the needs of these chapter 11 cases," such that the relief requested is authorized in light of

section 305's broad scope.  *Picacho Hills Util. Co., Inc.*, 2017 WL 1067754, at *6; *Weldon F.

Stump & Co.*, 373 B.R. at 826 n.1 (Bankr. N.D. Ohio 2007).

32.      The Bankruptcy Suspension will enable the Debtors to temporarily halt both their

operations and the continuation of these bankruptcy proceedings, with the continued imposition

of the automatic stay, until such time as they can reinitiate the Store Closing Sales.  As in

*Milestone Educ. Inst.*, the Bankruptcy Suspension will preserve the Debtors estates and "increase

the amount of money available to distribute to [the debtor's] creditors," which is the stated

purpose of these chapter 11 proceedings. *See id.* 167 B.R. at 718, 724 (suspending a chapter 11

case and noting that suspension would "preserve the bankruptcy petition filing date for purposes

of bringing preference actions" which was the stated purpose of the chapter 11 filing).

33.     During the Bankruptcy Suspension, the Debtors intend to make payments

consistent with the authority granted in the Interim Order (I) Authorizing Use of Cash Collateral

and Affording Adequate Protection; (II) Modifying Automatic Stay; (III) Scheduling a Final

Hearing; and (IV) Granting Related Relief [Docket No 66] (the "**Cash Collateral Order**"), as

modified by the Modified Budget.[6]  As set forth above, the Modified Budget is a subset of the

budget already approved by the Court.  It has been substantially reduced to provide for the

payment of only those expenses deemed critical to enable the Debtors to reoperationalize their

enterprise and safeguard the success of the Store Closing Sales once COVID-19 abates.  By

deferring, among other things, certain rent and other non-critical obligations during the

Operational Suspension, the Court will provide the Debtors with the breathing spell necessary to

enable them to successfully reimplement the Store Closing Sales at a later date.[7]  Indeed, the

Bankruptcy Code already contemplates, in the appropriate case, that rent may be deferred for a

60-day period.  *See* 11 U.S.C. § 365(d)(3) ("The court may extend, for cause, the time for

performance of any such obligation that arises within 60 days after the date of the order for

relief, but the time for performance shall not be extended beyond such 60-day period.").  In light

---

[6] The Cash Collateral Order contemplates the possibility of revisions to the Budget (as defined therein). Specifically, the Cash Collateral Order notes that the Budget "may be updated from time to time with the prior written consent of the Prepetition Administrative Agent and Prepetition Term Agent."  *See* Cash Collateral Order at ¶ 3(a).

[7] The Debtors reserve all rights to argue that obligations allegedly accrued during the Operational Suspension are waived, abated, or otherwise not subject to payment for reasons including, but not limited to, the existence of force majeure, quiet enjoyment, or other applicable contractual provisions or legal rights.

13

of the fact that the Debtors will not be operating (and, indeed, cannot operate) during that time, cause exists to grant the relief requested.  The Debtors believe the Modified Budget will enable them to effectuate the Operational Suspension and the Bankruptcy Suspension so as to maintain these chapter 11 cases for the benefit of all of the Debtors' creditors.  Although the relief requested is unique, it is appropriate in these cases given the unprecedented impact of COVID-19 not only on the Debtors' operations but also on the United States economy in its entirety.

34.	Separately, the Bankruptcy Suspension benefits the Debtors and their creditors in that (i) it will enable the Debtors to avoid incurring unnecessary administrative costs, including professionals' fees, during the Operational Suspension and (ii) the continued imposition of the automatic stay will ensure no creditor takes self-interested action to the detriment of the Debtors' estates and all other parties.

35.	Although the Debtors anticipate that there will be minimal work for their professionals during the Bankruptcy Suspension, out of an abundance of caution, they seek conditional approval of the Cole Schotz and A&G retention applications, subject to the deferral of all deadlines until the twenty-first day following the termination of the Bankruptcy Suspension.  As set forth in more detail above, the Debtors' professionals may draw down on their retainers during the Bankruptcy Suspension provided, however, that all funds so drawn shall remain subject to the entry of a final order approving the award of such compensation.  *See* note 4, *supra*.

36.	For the reasons set forth above, based on the "peculiar circumstances" COVID-19 has imposed on the United States economy, in general, and the retail industry, in particular, the Debtors submit that the Bankruptcy Suspension presents the best prospect of recovery for most, if not all, of the Debtors' creditors.  *In re Gabriel Techs. Corp.*, 2013 WL 5550391, at *5.  In

14

sum, as in, *Milestone Educ. Inst.*, any potential harm of Bankruptcy Suspension is "outweighed

by the salutary effect" of the suspension. *Id.* at 724.

**B.**     **Alternatively, the Bankruptcy Suspension Is Authorized Pursuant to Section 105 of the Bankruptcy Code**

37.     Alternatively, the relief requested is authorized pursuant to section 105 of the

Bankruptcy Code.  Section 105(a) provides, in relevant part, that, "[t]he court may issue any

order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title."  11 U.S.C. §105(a).  This provision codifies the inherent equitable powers of the

bankruptcy court.  As one court articulated, section 105 is "an omnibus provision phrased in such

general terms as to be the basis for a broad exercise of power in the administration of a

bankruptcy case.  The basic purpose of § 105 is to assure the bankruptcy courts power to take

whatever action is appropriate or necessary in aid of the exercise of its jurisdiction."  *Davis v.*

*Davis (In re Davis)*, 170 F.3d 475, 492 (5th Cir. 1999) (citing 2 L. King, Collier On

Bankruptcy § 105.01, at 105–3 (1996)).  For the reasons set forth above, the Debtors believe that

the imposition of the Bankruptcy Suspension, including the Operational Suspension, is necessary

to carry out the provisions of this title as it will enable the Debtors to maximize the value of their

assets, for the benefit of all creditors, through the liquidation of their inventory and sale of their

valuable leasehold interests after the threat of COVID-19 subsides.

## VI.     WAIVER OF CERTIFICATION AND MEMORANDUM OF LAW

38.     The Debtors respectfully request that the Court waive the requirement set forth in

Local Rule 9013-1(a)(2) that any motion be accompanied by a certification containing the facts

supporting the relief requested in compliance with Local Bankruptcy Rule 7007-1 because the

facts set forth in this Application have been verified by the Debtors' Chief Restructuring Officer,

Robert J. Duffy.

39.    The Debtors further request that the Court waive the requirement set forth in Local Rule 9013-1(a) (3) that any motion be accompanied by a memorandum of law stating the legal basis of the relief requested because the legal basis upon which the Debtors rely is incorporated herein.

## VII.    NO PRIOR REQUEST

40.    No prior request for the relief sought in this Application has been made to this Court or any other court.

## VIII.    NOTICE

41.    Notice of this Application has been provided to (i) the Office of the United States Trustee for Region 3; (ii) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis); (iii) counsel for the administrative agent under the Debtors' pre-petition revolving credit facility, JPMorgan Chase Bank, N.A., c/o Daniel F. Fiorillo, Esq. and Chad B. Simon, Esq., Otterbourg P.C.; (iv) counsel for the term agent under the Debtors' pre-petition term loan, Wells Fargo Bank, National Association, c/o Steven E. Fox, Esq., Riemer & Braunstein LLP; (v) the Internal Revenue Service; (vi) the United States Attorney's Office for the District of New Jersey; and (vii) any party requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

55008/0002-20051549v2

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:  March 23, 2020                      Respectfully submitted,

                                            **COLE SCHOTZ P.C.**
                                            *Proposed Attorneys for Debtors*
                                            *and Debtors in Possession*

                                            By:    */s/ Michael D. Sirota*
                                                   Michael D. Sirota
                                                   David M. Bass
                                                   Felice R. Yudkin
                                                   Court Plaza North
                                                   25 Main Street
                                                   Hackensack, NJ 07601
                                                   Telephone:  (201) 489-3000
                                                   Facsimile:  (201) 489-1536
                                                   Email: msirota@coleschotz.com
                                                          dbass@coleschotz.com
                                                          fyudkin@coleschotz.com

## <u>VERIFICATION</u>

ROBERT J. DUFFY, of full age, certifies as follows:

1.      I am the Chief Restructuring Officer of Modell's Sporting Goods, Inc. and its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases.  As such, I have full knowledge of the facts set forth in and am duly authorized to make this verified application (the "**Application**") on the Debtors' behalf.

2.      I have read the foregoing Application and certify that the statements contained therein are true based upon my personal knowledge, information, and belief.

3.      I am aware that if any of the factual statements contained in the Application are willfully false, I am subject to punishment.


DATED:  March 23, 2020


                                    */s/ Robert J. Duffy*
                          _____

                                    ROBERT J. DUFFY

# EXHIBIT A

## Modified Budget

**Modell's**
**Cash Collateral Budget**
**$ in 000s**

| | Week Number | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Week Ending Saturday | 28-Mar | 4-Apr | 11-Apr | 18-Apr | 25-Apr | 2-May | 9-May | 16-May | 23-May | 30-May | 6-Jun | 13-Jun | 20-Jun | 27-Jun | 4-Jul | 11-Jul | 18-Jul | 25-Jul | 1-Aug | Wks 1 -19 |
| | Fiscal Month | Mar | Mar | Apr | Apr | Apr | May | May | May | May | May | Jun | Jun | Jun | Jun | Jul | Jul | Jul | Jul | Jul | |
| | **Proceeds** | | | | | | | | | | | | | | | | | | | | |
| 1.) | Collection of AR | 2,129 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 2,129 |
| 2.) | GOB Proceeds | - | - | - | - | - | - | - | - | - | 6,412 | 6,594 | 10,225 | 13,546 | 16,470 | 15,234 | 12,227 | 7,384 | 9,026 | 9,026 | 106,143 |
| 3.) | Other Proceeds | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 5,323 | 5,323 |
| 4.) | **Total Receipts** | **2,129** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **6,412** | **6,594** | **10,225** | **13,546** | **16,470** | **15,234** | **12,227** | **7,384** | **9,026** | **14,349** | **113,596** |
| | **Tolling Costs** | | | | | | | | | | | | | | | | | | | | |
| 5.) | Weekly Corp Payroll | (104) | (70) | (50) | (35) | (35) | (35) | (50) | (75) | (100) | - | - | - | - | - | - | - | - | - | - | (554) |
| 6.) | Non-Personnel Carrying Cost | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | - | - | - | - | - | - | - | - | - | - | (450) |
| 7.) | Insurance Premiums | (500) | - | - | (377) | - | - | - | - | (99) | - | - | - | - | - | - | - | - | - | - | (976) |
| 8.) | Occupancy Costs | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (13,449) | (13,449) |
| 9.) | **Total Tolling Costs** | **(654)** | **(120)** | **(100)** | **(462)** | **(85)** | **(85)** | **(100)** | **(125)** | **(249)** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **(13,449)** | **(15,429)** |
| | **Accruals** | | | | | | | | | | | | | | | | | | | | |
| 10.) | Accrued Payroll | (1,862) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (1,862) |
| 11.) | Accrued Sales Tax | (607) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (607) |
| 12.) | Accrued Benefits | (197) | - | - | (148) | - | - | - | - | - | (650) | - | - | - | - | - | - | - | - | - | (995) |
| 13.) | **Total Accruals** | **(2,666)** | **-** | **-** | **(148)** | **-** | **-** | **-** | **-** | **-** | **(650)** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **(3,463)** |
| | **Operating Costs** | | | | | | | | | | | | | | | | | | | | |
| 14.) | Store Occupancy & Utilities | - | - | - | - | - | - | - | - | - | - | (3,000) | (4,500) | - | - | (3,000) | (3,500) | - | - | - | (14,000) |
| 15.) | Store Payroll & Expenses | - | - | - | - | - | - | - | - | - | (1,913) | (1,913) | (1,913) | (1,913) | (1,913) | (1,913) | (1,913) | (1,913) | (1,913) | (1,913) | (19,125) |
| 16.) | Liquidation Expenses | - | - | - | - | - | - | - | - | - | (768) | (768) | (768) | (768) | (768) | (768) | (768) | (768) | (768) | (768) | (7,675) |
| 17.) | Corporate Overhead | - | - | - | - | - | - | - | - | - | (840) | (840) | (840) | (840) | (840) | (840) | (840) | (840) | (840) | (840) | (8,395) |
| 18.) | **Total Operating Costs** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **(3,520)** | **(6,520)** | **(8,020)** | **(3,520)** | **(3,520)** | **(6,520)** | **(7,020)** | **(3,520)** | **(3,520)** | **(3,520)** | **(49,196)** |
| | **Non-Operating Costs** | | | | | | | | | | | | | | | | | | | | |
| 19.) | Professional Fees (Carve-out) | - | - | - | - | - | - | - | - | - | (406) | (406) | (406) | (406) | (406) | (406) | (406) | (406) | (406) | (406) | (4,059) |
| 20.) | US Trustee Fees | - | - | - | - | - | - | - | (90) | - | - | - | - | - | - | - | - | - | - | (250) | (340) |
| 21.) | KERP | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (500) | (500) |
| 22.) | Stub Rent | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (3,987) | (3,987) |
| 23.) | 503(b)(9) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (2,325) | (2,325) |
| 24.) | **Total Non-Operating Costs** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **(90)** | **-** | **(406)** | **(406)** | **(406)** | **(406)** | **(406)** | **(406)** | **(406)** | **(406)** | **(406)** | **(7,468)** | **(11,211)** |
| 25.) | **Net Cash Flow** | **(1,190)** | **(120)** | **(100)** | **(609)** | **(85)** | **(85)** | **(100)** | **(215)** | **(249)** | **1,836** | **(331)** | **1,800** | **9,621** | **12,544** | **8,309** | **4,801** | **3,458** | **5,100** | **(10,088)** | **34,297** |
| 26.) | Memo: Total Disbursements* | (3,319) | (120) | (100) | (609) | (85) | (85) | (100) | (215) | (249) | (4,575) | (6,925) | (8,425) | (3,925) | (3,925) | (6,925) | (7,425) | (3,925) | (3,925) | (24,437) | (79,299) |
| | **Cash Balance** | | | | | | | | | | | | | | | | | | | | |
| 27.) | Beginning Cash | 3,808 | 2,618 | 2,498 | 2,398 | 1,788 | 1,703 | 1,618 | 1,518 | 1,303 | 1,054 | 1,891 | 1,560 | 1,359 | 980 | 1,024 | 917 | 5,718 | 9,177 | 14,277 | 3,808 |
| 28.) | +/- Net Cash Flow | (1,190) | (120) | (100) | (609) | (85) | (85) | (100) | (215) | (249) | 1,836 | (331) | 1,800 | 9,621 | 12,544 | 8,309 | 4,801 | 3,458 | 5,100 | (10,088) | 34,297 |
| 29.) | Draws / (Paydown) | - | - | - | - | - | - | - | - | - | (1,000) | - | (2,000) | (10,000) | (12,500) | (8,416) | - | - | - | - | (33,916) |
| 30.) | **Ending Cash** | **2,618** | **2,498** | **2,398** | **1,788** | **1,703** | **1,618** | **1,518** | **1,303** | **1,054** | **1,891** | **1,560** | **1,359** | **980** | **1,024** | **917** | **5,718** | **9,177** | **14,277** | **4,189** | **4,189** |
| 31.) | Memo: Cash Collateral Account Balance | 1,149 | 1,029 | 929 | 319 | 234 | 149 | 49 | - | - | 836 | 505 | 305 | 200 | 244 | 137 | - | - | - | - | |
| 32.) | Memo: Operating Account Balance* | 1,469 | 1,469 | 1,469 | 1,469 | 1,469 | 1,469 | 1,469 | 1,303 | 1,054 | 1,054 | 1,054 | 1,054 | 780 | 780 | 780 | 5,718 | 9,177 | 14,277 | 4,189 | |
| | **Outstanding Debt Obligations** | | | | | | | | | | | | | | | | | | | | |
| 33.) | Beginning Total Debt | 31,983 | 32,114 | 32,245 | 32,376 | 32,507 | 32,638 | 32,770 | 32,901 | 33,033 | 33,165 | 32,297 | 32,428 | 30,559 | 20,688 | 8,308 | - | - | - | - | 31,983 |
| 34.) | + Accrued Interest | 31 | 31 | 31 | 31 | 31 | 31 | 32 | 32 | 32 | 32 | 31 | 31 | 29 | 20 | 8 | - | - | - | - | 433 |
| 35.) | + Weekly Consent Fee | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | - | - | - | - | 1,500 |
| 36.) | Draws / (Paydown) | - | - | - | - | - | - | - | - | - | (1,000) | - | (2,000) | (10,000) | (12,500) | (8,416) | - | - | - | - | (33,916) |
| 37.) | **Ending Total Debt** | **32,114** | **32,245** | **32,376** | **32,507** | **32,638** | **32,770** | **32,901** | **33,033** | **33,165** | **32,297** | **32,428** | **30,559** | **20,688** | **8,308** | **-** | **-** | **-** | **-** | **-** | **-** |

*Note: for the avoidance of doubt, the Cash Collateral Order refers to "Memo: Total Disbursements" as line number 20 and "Memo: Operating Account Balance" as line number 28.*

**PROPOSED ORDER**

2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Michael D. Sirota, Esq.
msirota@coleschotz.com
David M. Bass, Esq.
dbass@coleschotz.com
Felice R. Yudkin, Esq.
fyudkin@coleschotz.com
(201) 489-3000
(201) 489-1536 Facsimile

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

In re:

MODELL'S SPORTING GOODS, INC., *et al.*,

Debtors.[1]

Chapter 11
Case No. 20-14179 (VFP)
Jointly Administered
**Hearing Date and Time:**
_____, 2020, at __:__ _.m. (ET)

### ORDER TEMPORARILY SUSPENDING THE DEBTORS'
### CHAPTER 11 CASES PURSUANT TO 11 U.S.C. §§ 105 AND 305

The relief set forth on the following pages, numbered two (2) through five (5), is hereby
**ORDERED**.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: Modell's Sporting Goods, Inc. (9418), Modell's II, Inc. (9422), Modell's NY II, Inc. (9434), Modell's NJ II, Inc. (9438), Modell's PA II, Inc. (9426), Modell's Maryland II, Inc. (9437), Modell's VA II, Inc. (9428), Modell's DE II, Inc. (9423), Modell's DC II, Inc. (9417), Modell's CT II, Inc. (7556), MSG Licensing, Inc. (8971), Modell's NH, Inc. (4219), Modell's Massachusetts, Inc. (6965) and Modell's Online, Inc. (2893). The Debtors' corporate headquarters is located at 498 Seventh Avenue, 20th Floor, New York, New York 10018.

Page (2)
Debtors:              MODELL'S SPORTING GOODS, INC., *et al.*
Case No.              20-14179 (VFP)
Caption of Order:     ORDER TEMPORARILY SUSPENDING THE DEBTORS' CHAPTER
                      11 CASES PURSUANT TO 11 U.S.C. §§ 105 AND 305

---

Upon the verified application (the "**Application**")[2] of Modell's Sporting Goods, Inc. and its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105 and 305 of the Bankruptcy Code and Bankruptcy Rule 1017 for entry of an order approving the Bankruptcy Suspension, as more fully set forth in the Application; and the Court having jurisdiction to decide the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157(a)-(b) and 1334(b); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Application having been given as provided in the Application, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice of the Application need be provided; and the Court having (the "**Hearing**") held a hearing to consider the relief requested; and upon the *Declaration of Robert J. Duffy in Support of Debtors' Chapter 11 Petitions and First Day Pleadings*, the records of the Hearing, and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Application and granted herein is in the best interests of the Debtors and their creditors, and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

Page (3)
Debtors:            MODELL'S SPORTING GOODS, INC., *et al.*
Case No.            20-14179 (VFP)
Caption of Order:   ORDER TEMPORARILY SUSPENDING THE DEBTORS' CHAPTER
                    11 CASES PURSUANT TO 11 U.S.C. §§ 105 AND 305

---

**IT IS HEREBY ORDERED THAT:**

1.      The Application is **GRANTED** as set forth herein.

2.      The Bankruptcy Suspension, including the Operational Suspension, is hereby
authorized and the Debtors' chapter 11 cases are hereby suspended for up to sixty days from the
date of this Order, pursuant to 11 U.S.C. § 305, without prejudice to the Debtors' right to seek
additional time.  Specifically:

      a.      The Debtors are authorized to implement the Operational Suspension.  To
the extent any of the terms of the Operational Suspension or any action
taken by the Debtors in order to effectuate same conflict with relief
previously ordered by the Court or their duties as debtors in possession,
this Order shall govern.

      b.      All deadlines that would otherwise occur during the Bankruptcy
Suspension are hereby extended until the twenty-first day following the
termination thereof.  All parties are hereby barred from seeking relief from
this Court during the Bankruptcy Suspension.

      c.      All payments of expenses other than those essential expenses set forth in
the Modified Budget are hereby deferred, provided that the Debtors
reserve all rights to argue that obligations allegedly accrued during the
Operational Suspension are waived, abated, or otherwise not subject to
payment for reasons including, but not limited to, the existence of force
majeure, quiet enjoyment, or other applicable contractual provisions or
legal rights.

      d.      The automatic stay shall remain in full force and effect during the
pendency of the Bankruptcy Suspension.

      e.      The retentions of Cole Schotz and A&G are conditionally approved.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
Application.

Page (4)
Debtors:            MODELL'S SPORTING GOODS, INC., *et al.*
Case No.            20-14179 (VFP)
Caption of Order:   ORDER TEMPORARILY SUSPENDING THE DEBTORS' CHAPTER
                    11 CASES PURSUANT TO 11 U.S.C. §§ 105 AND 305

---

    f.     The Debtors' professionals are authorized to draw on their respective retainers during the Bankruptcy Suspension but are not obligated to file and serve monthly fee statements or interim compensation applications during the Bankruptcy Suspension.  Notwithstanding the foregoing, (i) at least five business days prior to making any such draw, a professional shall serve a statement reflecting the number of hours worked and amount billed by such professional, broken down by timekeeper, on the Debtors' pre-petition lenders and the Office of the United States Trustee for Region 3 and (ii) any funds the professionals draw against their retainers during the Bankruptcy Suspension shall remain subject to the entry of a final order approving the award of such compensation.

3.     The Operational Suspension shall be enacted on the following terms:

    a.     To the extent they have not already done so, the Debtors shall immediately (i) cease operations, including Store Closing Sales, at all 134 of their retail stores as well as fulfillment of orders on the e-commerce site, (ii) terminate store-level and distribution center employees, without severance, and (iii) cease all in-person operations at their corporate headquarters and terminate most corporate employees, without severance.

    b.     The Debtors may continue to employ certain critical employees responsible for human relations, finance, and infrastructure technology functions during the Operational Suspension.

    c.     The Debtors are authorized to use cash collateral to pay certain critical expenses pursuant to the Modified Budget.

4.     Notwithstanding the foregoing, should COVID-19 abate before the sixty-day period has expired, the Debtors' may file a notice with the Bankruptcy Court informing it of the termination of the Bankruptcy Suspension.

5.     The Cash Collateral Order is hereby amended to replace the Budget (as defined therein) with the Modified Budget, a copy of which is attached as Exhibit A to the Application. For the avoidance of doubt, the Cash Collateral Order, as amended by the Modified Budget,

Page (5)
Debtors:            MODELL'S SPORTING GOODS, INC., *et al*.
Case No.            20-14179 (VFP)
Caption of Order:   ORDER TEMPORARILY SUSPENDING THE DEBTORS' CHAPTER
                    11 CASES PURSUANT TO 11 U.S.C. §§ 105 AND 305

---

remains in full force and effect during the Operational Suspension and the Bankruptcy

Suspension.

6.      The requirement set forth in Local Rule 9013-1(a)(2) that any motion be

accompanied by a certification containing the facts supporting the relief requested in compliance

with Local Bankruptcy Rule 7007-1 is deemed satisfied by the contents of the verified

Application or otherwise waived.

7.      The requirement set forth in Local Rule 9013-1(a)(3) that any motion be

accompanied by a memorandum of law stating the legal basis of the relief requested is deemed

satisfied by the contents of the Application or otherwise waived.

8.      Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order

shall be immediately effective and enforceable upon its entry.

9.      The Debtors are authorized to take all actions necessary to effectuate the relief

granted pursuant to this Order, including to effectuate the intent of the Operational Suspension

and the Bankruptcy Suspension, in accordance with the Application.

10.     This Court shall retain jurisdiction to hear and determine all matters arising from

or related to the implementation, interpretation, and/or enforcement of this Order.