BALLON STOLL BADER & NADLER, P.C.
729 Seventh Avenue
New York, NY 10019
Telephone: (212) 575-7900
Facsimile: (212) 764-5060
Vincent J. Roldan
vroldan@ballonstoll.com

*Proposed Attorneys for Mezz57th LLC*

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>---------------------------------------------------------X<br>In Re:<br><br>MEZZ57TH LLC et al.<br><br>              Debtors and<br>              Debtors in Possession<br>---------------------------------------------------------X | Chapter 11<br><br>Case No.: 20-11316<br><br>(Jointly Administered) |

## DECLARATION OF JOHN BARRETT WITH RESPECT TO POST-OPENING OPERATIONS

I, John Barrett, declare, certify, verify and/or state under penalty of perjury of the laws of the United States of America, pursuant to 28 U.S.C. §1746, as follows:

1. I am the managing member of Mezz57th LLC d/b/a John Barrett (the "Operating Debtor"), which operates the John Barrett salon located at 36 E 57th Street (the "Salon"), and the sole shareholder and President of John Barrett Inc. ("JBI"). I am familiar with the facts and circumstances as recited herein.

2. I submit this Declaration to inform the Court and parties in interest of the operations of Mezz57th LLC, after re-opening on June 22, 2020.

### Background

3. As I previously stated, the Operating Debtor was well on its way with restructuring its operations in early 2020. Combined with key talent acquisitions, the Operating Debtor was

1

expecting 2020 would show increased revenue and profit. The Covid-19 pandemic intervened and caused the Operating Debtor to shut down on March 16, 2020.

4. When these cases were first filed, it was unclear when the Operating Debtor will re-open. On June 22, 2020, New York entered into "Phase 2" of the state's Covid-19 reopening plan. The Operating Debtor has re-opened its salon, but must comply with strict guidelines that will impact operations and impact the ability to generate sustainable revenue to pre-Covid levels.[1] The various measures being taken by the Operating Debtor are set forth below.

### Post-Opening Safety Measures

5. In accordance with state and city law with respect to distance guidelines, the Operating Debtor is currently operating at about 50% capacity. In addition, the Operating Debtor has taken the following actions in order to comply with safety regulations:

- on arrival all staff and clients have their temperature checked;
- clients have to answer several health questions;
- installation of screen dividers between clients;
- all client robes now have to be individually wrapped;
- an extra member of staff has to stay outside dressing rooms to clean and sterilize after each use;
- we provide masks, shields and goggles to employees and clients;
- we longer use regular cleaning materials; instead, all stations and any surface are sterilized after use by one client and in preparation for the next client;
- installation of protective plexiglass barriers throughout for our staff protections;

6. In addition, the Operating Debtor has purchased various supplies necessary to implement these safety measures including but not limited to: (i) surgical masks (ii) gloves; (iii) hand sanitizer; (iv) garment bags; (v) garment covers; (vi) more barbacide; (vii) plexiglass front desk; (viii) plexiglass coat check; (ix) manicure plexiglass dividers; (x) clear dividers; (xi) privacy stands; (xii) sink dividers; (xiii) hand sanitizer stands; (xiv) hand sanitizer replacement soap

---

[1] See e.g. https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/HairSalonsAndBarbershopMasterGuidance.pdf

dispensers; (xv) soap replacement; (xvi) ultra-violet lamps; (xvii) disposable smocks; (xviii) employee face guards and goggles; (xix) disinfectant spray; (xx) 90% alcohol; (xxi) hand sanitizer; (xxii) client face guards; and (xxiii) thermometer guns.

7. The Operating Debtor has incurred expenses (approximately $13,000) in order to meet these health regulations plus another $10,000 for air conditioning. At the same time, the Operating Debtor must comply with limitations on its own business operations. During normal operations, the Operating Debtor provided services that can no longer be provided, such as waxing, manicure/pedicure, make up services and applications. These the restricted services account to about 18% of the Operating Debtor's business.

8. In its first week of re-opening (June 22- June 29), the Operating Debtor obtained approximately $177,000 in revenue. While I am pleased with these results (revenue in a typical Summer week for the Salon is about $156,000), I am cautious because I believe the revenue was due to the accumulation of demand for hair styling services during these three months that the Salon was closed. I believe this brief surge is therefore temporary. For the current week (week of June 29), we currently expect to receive $115,000 in revenue.

**Negotiations with Landlord**

9. In the midst of this uncertainty, the Operating Debtor needs to conserve cash for the benefit of all creditors. Towards this end, the Operating Debtor filed a motion for relief in connection to its interim budget, which includes authority to temporarily cease making or delaying payments to its landlord. I adopt all factual statements made in that motion, as though stated in full herein.

10. From on or about March 16, 2020 until June 22, 2020, the Operating Debtor was not operating its business and did not pay rent during such time. The Operating Debtor attempted

3

to negotiate a rent abatement with MIP 57th Development Acquisition (the "Landlord") agent but was unsuccessful. The Operating Debtor believes that the Landlord is being unreasonable given the circumstances. New York City continues to face the challenges from the COVID-19 pandemic, including the extended closures of the Salon, the significantly reduced occupancy capacity, and the customary services that are now forbidden. There are still numerous vacancies in the neighborhood, and boarded-up store fronts. Hotels that are a significant source foot traffic, such as the nearby Four Seasons, are currently closed. When combined with these vacancies, it is a very different environment than what the Landlord assured the Salon would see.

11. The Operating Debtor's June 30 day budget called for use of about $150,000 in Paycheck Protection Program ("PPP") funds for necessary operating expenditures, all consistent with the PPP program. If the Operating Debtor was to pay rent to the Landlord, it would be an additional $90,000, or a 60% increase in expenditures which do not correspond to the benefit the Operating Debtor would receive even when open.

12. Against this backdrop, the Operating Debtor has had very preliminary conversations with the Landlord with respect to rent moving forward. It is doubtful that the Operating Debtor can return to 100% operations any time soon due to the laws and regulations imposed on it --- and even then it will be hampered by the vacancies in the neighborhood and the corresponding significant decrease in foot traffic. Looming large are the rising infections in Florida and elsewhere that have occurred upon reopening. Should infections rise in New York City, it is almost a certainty that there will be significant repercussions to the ongoing business and may even include being forced to shut down again.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: New York, New York
June 30, 2020

_____
John Barrett