BALLON STOLL BADER & NADLER, P.C.
729 Seventh Avenue
New York, NY 10019
Telephone: (212) 575-7900
Facsimile: (212) 764-5060
Vincent J. Roldan
vroldan@ballonstoll.com

*Proposed Attorneys for Mezz57th LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In Re:                                              Chapter 11

MEZZ57TH LLC *et al.*                       Case No.: 20-11316

         Debtor and                          (Jointly Administered)
         Debtor in Possession
---------------------------------------------------------X

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING
THE DEBTOR TO PAY CERTAIN PREPETITION CLAIMS OF
<u>CRITICAL VENDORS, AND (B) GRANTING RELATED RELIEF</u>**

Mezz57th LLC, debtor and debtor in possession ("<u>Operating Debtor</u>"), by its proposed attorneys Ballon Stoll Bader & Nadler, P.C., files this motion (the "<u>Motion</u>") for entry of an Order (A) Authorizing the Debtor to Pay Certain Prepetition Claims of Critical Vendors and (B) Granting Related Relief, and respectfully states as follows:

**Preliminary Statement**

The Operating Debtor has re-opened its salon on June 22, 2020 after three months of closure due to the Covid-19 pandemic. As part of its reorganization efforts, it is essential for the Operating Debtor, a high-end beauty salon, to maintain the supply of the certain specialized goods and services. By this Motion, the Operating Debtor seeks authority to pay, in its discretion, up to $100,000 in pre-petition trade debt owing to certain vendors whom the Operating Debtor believes

1

are critical to its operations. As set forth below, these amounts represent about 2.5% of the total scheduled unsecured debt of the Operating Debtor.

**Jurisdiction and Venue**

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§1408 and 1409.

2. The statutory bases for the relief requested herein are §§ 105(a) and 365(d) title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "<u>Bankruptcy Code</u>"), and Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

**Background**

3. On May 29, 2020 (the "<u>Petition Date</u>"), the Operating Debtor, along with John Barrett Inc., filed a voluntary petition for relief pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code. The Operating Debtor is operating its business as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

4. On June 1, 2020, pursuant to 11 U.S.C. § 1183(a), the United States Trustee appointed Charles Persing as Subchapter V trustee for the Operating Debtor.

5. The Operating Debtor's business and facts precipitating the filing of the Operating Debtor's Chapter 11 proceeding is set forth in the Affidavit of John Barrett Pursuant To Local Bankruptcy Rule 1007-2 (the "<u>Barrett Affidavit</u>") filed on June 3, 2020. Those facts are incorporated herein by reference.

**The Operating Debtor's Critical Vendors**

6. As stated in the Barrett Affidavit, the Operating Debtor operates a high-end hair salon (the "<u>Salon</u>") in midtown Manhattan. As part of the Operating Debtor's business, it requires

various specialized beauty products and supplies for its customers. Aside from the Salon, the Operating Debtor's main asset is its good will. The Operating Debtor has a loyal base of customers and its business is dependent on brand name recognition and customer satisfaction. The Operating Debtor's ability to deliver on that model depends on its access to and relationships with a network of vendors and suppliers, and it is essential to the success of the Operating Debtor's restructuring efforts that it be able to maintain the supply of the specialized goods critical to the Operating Debtor's business operations and sales to customers. If the Operating Debtor cannot maintain access to these valuable specialized goods, it risks losing customers to other beauty salons. Accordingly, to maintain stability during this critical stage of these chapter 11 cases and to avoid jeopardizing the Operating Debtor's sales and business operations going forward, the Operating Debtor, by this motion seek the relief requested.

7. The Operating Debtor has identified certain vendors (collectively, the "Critical Vendors") that supply products and services that are vital to the Operating Debtor's go-forward operations. These products (collectively, the "Critical Vendor Products") are generally single source styling products, specialized hair coloring, hair extensions, cleaning products, or distributors with access to unique combinations of all of the foregoing, critical service providers, or are consignment vendors. The Operating Debtor does not have a contract with these vendors to rely on.

8. Most of the Critical Vendor Products are available from only a limited number of vendors. Not only does the Operating Debtor rely heavily on the Critical Vendors to deliver current orders, but it also relies on such Critical Vendors for all future deliveries. Any interruption in the provision of such Critical Vendor Products could frustrate customers and ultimately jeopardize sales.

9. Moreover, the Operating Debtor believes that jeopardizing its relationships with the Critical Vendors and attempting to procure the Critical Vendor Products from replacement vendors would impose a severe strain on its business operations (already reeling from the Covid-19 mandated closing) and would likely result in significant revenue loss.

10. Prior to the Petition Date, and in the face of their liquidity struggles, the Operating Debtor has significantly delayed payments on outstanding invoices for the Critical Vendor Products. As such, the Operating Debtor believes that the Critical Vendors have already reached their limits and if the Operating Debtor further delays payments for the Critical Vendor Products, the Critical Vendors may cease to supply the Critical Vendor Products altogether.

11. Accordingly, in light of the potential for immediate irreparable consequences if the Critical Vendors does not continue to provide uninterrupted and timely deliveries of goods and services, the Operating Debtor has determined, in the exercise of its business judgment, that payment of the prepetition claims of Critical Vendors (the "<u>Vendor Claim</u>s") necessary to the go-forward business is essential to avoid costly disruptions to its operations.

12. With the assistance of its advisors, the Operating Debtor has spent significant time reviewing to identify certain critical business relationships and suppliers of goods —the loss of which would immediately and irreparably harm its businesses. In this process, the Operating Debtor considered a variety of factors, including:

- whether certain specifications prevent, directly or indirectly, the Operating Debtor from obtaining goods or services from alternative sources;
- whether a vendor is a sole-source, limited-source, or high-volume supplier of goods or services critical to the Operating Debtor's business operations;
- whether an agreement exists by which the Operating Debtor could compel a vendor to continue performing on prepetition terms;
- whether alternative vendors are available that can provide the requisite volumes of similar goods or services on equal (or better) terms and, if so, whether the Operating Debtor would be able to continue operating while transitioning business thereto;

- the degree to which replacement costs (including, pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a vendor's prepetition claim;
- the likelihood that a temporary break in the vendor's relationship with the Operating Debtor could be remedied through use of the tools available in this chapter 11 case.

13. Following this analysis, the Operating Debtor identified just handful of vendors as Critical Vendors for purposes of the relief requested herein, who are collectively owed about $100,000 prior to the Petition Date. A large part of these claims are for consigned goods worth approximately $33,000. Out of an abundance of caution, the Operating Debtor is seeking payment to these consignment vendors in the context of this Motion.

14. Accordingly, by this motion, the Operating Debtor requests authorization, but not direction, to pay all outstanding prepetition obligations on account of Vendor Claims, in an aggregate amount up to $100,000 on a final basis. This represents about 2.5% of the Operating Debtor's Schedule F unsecured claims.

15. The interruption of business with or absence of the Critical Vendors would reduce the efficiency of the Operating Debtor's operations. Any material interruption in the provision of the Critical Vendor Products—however brief—would disrupt the Operating Debtor's operations and could cause irreparable harm to the Operating Debtor's go-forward businesses, goodwill, employees, customer base, and market share. Such harm would likely far outweigh the cost of payment of the Vendor Claims. Accordingly, by this motion, the Operating Debtor seeks authorization to pay the Vendor Claims subject to the limitations set forth in the proposed order.

**Trade terms**

16. Subject to the Court's approval, the Operating Debtor intends to pay the Vendor Claims only to the extent necessary to preserve the value of its estate. To that end, in return for paying the Vendors Claims either in full or in part, the Operating Debtor proposes that it be

authorized to require that the Vendors provide favorable trade terms for the postpetition procurement of goods and services from the Critical Vendors. Specifically, the Operating Debtor seeks authorization, but not direction, to condition payment of Vendor Claims upon each Critical Vendor's agreement to continue—or recommence—supplying the Critical Vendor Products to the Operating Debtor in accordance with trade terms (including credit limits, pricing, timing of payments, availability, and other terms) at least as favorable to the Operating Debtor as those in place prior to the Petition Date, or as otherwise agreed by the Operating Debtor in its reasonable business judgment (the "Trade Terms"). The Operating Debtor also seeks authorization, but not direction, to require certain Critical Vendors to enter into a contractual agreement evidencing such Trade Terms.

17. In addition, the Operating Debtor requests that if any party accepts payment pursuant to the relief requested by this motion and thereafter ceases to provide Critical Products in accordance with the Trade Terms: (a) the Operating Debtor may take any and all appropriate steps to recover from such Critical Vendor any payments made to it on account of its prepetition claim to the extent that such payments exceed the postpetition amounts then owing to such party (b) upon recovery by the Operating Debtor, any prepetition claim of such party shall be reinstated as if the payment on account thereof had not been made; and (c) if an outstanding postpetition balance is due from the Operating Debtor to such party, (i) the Operating Debtor may elect to recharacterize and apply any payment made pursuant to the relief requested by this motion to such outstanding postpetition balance, and (ii) such party will be required to repay to the Operating Debtor such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

**Discussion**

A.   Section 105 Relief

18.   Courts in this district generally acknowledge that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). In so doing, courts rely on several legal theories rooted in sections 105(a), 363(b), 1107(a), and 1108 of the Bankruptcy Code.

19.   Courts recognize that payments to prepetition creditors are appropriate pursuant to section 105(a) of the Bankruptcy Code under the "doctrine of necessity" or the "necessity of payment" rule where such payments are necessary to the continued operation of the debtors' business. *See In re United Am., Inc.*, 327 B.R. 776, 782 (Bankr. E.D. Va. 2005) (acknowledging the doctrine of necessity "because otherwise there will be no reorganization and no creditor will have an opportunity to recoup any part of its pre-petition claim"); *In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation). Several courts apply the doctrine of necessity where payment of a prepetition claim (a) is "necessary for the successful reorganization of the debtor," (b) falls within "the sound business judgment of the debtor," and (c) will not "prejudice other unsecure creditors." *United Am.*, 327 B.R. at 782; *see, also In re Universal Fin., Inc.*, 493 B.R. 735, 739–40 (Bankr. M.D. N.C. 2013)

(applying the *United American* three-part test); *In re Corner Home Care, Inc.*, 438 B.R. 122, 126 (Bankr. W.D. Ky. 2010) (same).

20. A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs*, 98 B.R. at 174–175. "Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *In re Ionosphere Clubs*, 98 B.R. at 177). The rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs*, 98 B.R. at 175–76; s*ee also Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition workers' compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); *In re Just For Feet*, 242 B.R. 821, 826 (Bankr. D. Del 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process.").

21. The Operating Debtor submits that all of the Operating Debtor's creditors will benefit if the Court grants the requested relief. Even a slight disruption to the goods and services provided by the Critical Vendors could leave the Operating Debtor unable to meet its obligations and disrupt their important relationships with their customers. The resulting harm to the Operating

Debtor's estate far outweighs the cost associated with paying a portion of the Operating Debtor's prepetition obligations to the Critical Vendors. Thus, the Operating Debtor's other creditors will be no worse off, and in fact will fare far better, if the Operating Debtor is empowered to negotiate such payments to achieve a smooth transition into bankruptcy with minimal disruption to its operations. Moreover, the Vendor Claims are limited to approximately 2.5 % of the Operating Debtor's outstanding Schedule F unsecured debt. As such, the Operating Debtor believes the relief sought in this motion will not burden the Operating Debtor, but will help maximize the value of its estate.

22. Moreover, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtor in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ*, 273 B.R. at 497. Implicit in the fiduciary duties of any debtor-in-possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id.* Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only… by the preplan satisfaction of a prepetition claim." *Id.* The court in *CoServ* specifically note the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . ." *Id.*

23. Consistent with a debtor's fiduciary duties, courts have also authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so. *See In re Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of prepetition wages); *In re James A. Phillips*, 29 B.R. at 397–98 (relying on section 363 of the Bankruptcy Code to allow contractor to pay

prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors).

24. Allowing the Operating Debtor to pay the Vendor Claims, pursuant to all or some of the above-referenced Bankruptcy Code provisions, is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code— preserving going concern value and maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship.*, 526 U.S. 434, 453 (1999). Indeed, reflecting the recognition that payment of prepetition claims of certain critical suppliers and vendors, as well as international vendors, in fact, both critical to a debtor's ability to preserve going-concerns and maximize creditor recovery—thereby increasing prospects for a successful reorganization—courts in this district routinely grant relief consistent to that which the Operating Debtor are seeking herein. *See, e.g., In re Avaya Inc.*, No. 17-10089 (SMB) (Bankr. S.D.N.Y. Feb. 10, 2017) (authorizing, on a final basis, the payment of up to $39.5 million in prepetition claims to critical vendors); *In re Aéropostale, Inc.*, No. 16-11275 (SHL) (Bankr. S.D.N.Y. June 3, 2016) (authorizing the payment of up to $4 million in prepetition claims to critical vendors

25. As described above, the Critical Vendor Products are essential to the Operating Debtor's successful transition into chapter 11 and continued operation of its business. The Operating Debtor's failure to pay the Vendor Claims could harm the Operating Debtor's ability to obtain necessary supplies, prevent the Operating Debtor from preserving favorable trade terms, and increase the likelihood for significant disruptions to the Operating Debtor's operations. This failure could, in turn, jeopardize precious customer relationships and could significantly impair the value of the Operating Debtor's business. For these reasons, the Operating Debtor believes the

relief requested herein is vitally necessary to preserve the value of its estate for the benefit of all stakeholders in these chapter 11 cases and should be granted.

## Waiver Of Bankruptcy Rule 6004

26. To implement the foregoing successfully, the Operating Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Operating Debtor have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

27. Nothing contained herein or any actions taken pursuant to such relief requested is intended to or should be construed as (a) an admission as to the validity of any prepetition claim against a Debtor entity, (b) a waiver of the Operating Debtor's or any other party in interest's right to dispute any prepetition claim on any grounds, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion, (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver of the Operating Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Operating Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

## Conclusion

28. For these foregoing reasons, the Operating Debtor respectfully requests the Court to enter an Order granting the relief requested herein. The Operating Debtor believes that such relief is absolutely vital to the Operating Debtor's ability to reorganize.

## Notice

29. Service of notice of this Motion will be made by mail on (i) the Office of the United States Trustee for the Southern District of New York, (ii) all parties having requested notices in the case, (iii) the Lenders, (iv) the Operating Debtor's twenty largest creditors (including the Landlord), and (v) the Subchapter V Trustee. The Operating Debtor submits that no other or further notice need be provided.

**WHEREFORE**, Operating Debtor respectfully requests entry of an Order granting the relief requested herein together with such other and further relief as is just and proper under the circumstances.

Dated: New York, New York
July 6, 2020

Respectfully submitted,

BALLON STOLL BADER & NADLER, P.C.

By: /s/ Vincent J. Roldan
Vincent J. Roldan (VR 7450)
*Proposed attorneys for Operating Debtor*
729 Seventh Avenue – 17th Floor
New York, NY 10019
212.575-7900
Fax 212.764-5060
www.ballonstoll.com