Jonathan L. Flaxer
Moshie Solomon
GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP
711 Third Avenue
New York, New York 10017
Telephone: (212) 907-7300
Facsimile:  (212) 754-0777

*Counsel for MIP 57th Development Acquisition LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | | |
|---|---|---|
| In Re | : | Chapter 11 |
| | : | |
| MEZZ57TH LLC, et al. | : | Case No. 20-11316 (SHL) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

------------------------------------------------------------x

### (I) OBJECTION OF MIP 57TH DEVELOPMENT ACQUISITION LLC TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER EXTENDING THE TIME TO ASSUME OR REJECT UNEXPIRED LEASE OF NON-RESIDENTIAL REAL PROPERTY AND (II) CROSS-MOTION OF MIP 57TH DEVELOPMENT ACQUISITION LLC FOR ENTRY OF AN ORDER (A) COMPELLING SURRENDER OF NON-RESIDENTIAL REAL PROPERTY AND (B) AUTHORIZING LANDLORD TO TAKE RELATED ACTIONS TO REPOSSESS NON-RESIDENTIAL REAL PROPERTY

MIP 57th Development Acquisition LLC (the "**Landlord**"), by its counsel Golenbock Eisenman Assor Bell & Peskoe, LLP, hereby files this (i) objection (the "**Objection**") to the Debtors' *Motion for Entry of an Order Extending the Time to Assume or Reject Unexpired Lease of Nonresidential Real Property* (the "**Motion**")[1] [Dkt. No. 78], and (ii) related cross-motion seeking entry of an order (A) compelling debtor Mezz57th LLC (the "**Operating Debtor**") to immediately surrender possession of the non-residential real property located at 432 Park Avenue a/k/a 36-46 East 57th Street, New York, New York (the "**Premises**") and remove all personal

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

property from the Premises and, if necessary, (B) modifying the automatic stay with respect to the Lease (as defined hereafter) to the extent necessary to allow the Landlord to terminate the Lease and repossess the Premises (the "**Cross-Motion**"). In support of the Objection and Cross-Motion, Landlord respectfully states as follows:

**Background**

1. On May 29, 2020 (the "**Petition Date**"), the Operating Debtor and John Barrett, Inc. (together with the Operating Debtor, the "**Debtors**") commenced with this Court voluntary cases under Subchapter V of chapter 11 of the Bankruptcy Code.

2. The Debtors continue to operate their respective businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

i. **Mezz57th's Pre-Petition Default Under the Lease**

3. On November 22, 2018, the Operating Debtor entered into an agreement (the "**Lease**") with the Landlord to lease retail space located at the Premises.[2]

4. As security for its obligations under the terms of the Lease, on or about November 13, 2018, the Debtors caused the issuance of an irrevocable standby letter of credit (the "**Letter of Credit**") in favor of the Landlord in the maximum aggregate amount of $1,050,720.

5. Pursuant to the terms of the Lease, the Operating Debtor is responsible for various charges related to its use and occupancy of the Premises, including, but not limited to minimum monthly rent and additional rent, and various other obligations that accrue and become due under the Lease, including its proportionate share of real property taxes. Specifically, among other

---

[2] Copies of all documents referenced herein may be found attached to the *Objection of MIP 57th Development Acquisition LLC to the Debtors Motion for Entry of an Order (I) Approving Relief Related to the Interim Budget and (II) Granting Related Relief, and Cross-Motion of MIP 57th Development Acquisition LLC to Compel the Debtors to (I) Perform Their Postpetition Obligations and, Alternatively, (II) Provide Adequate Protection* [Dkt. No. 46] and the Response Declaration [Dkt. No. 51] (defined herein).

things, Debtor is required to pay minimum monthly rent of $90,186.80 in advance of the first day of each calendar month, plus certain charges in the current amounts of $291.67, per month, for a minimum total monthly rental obligation of $90,478.47 per month due to the Landlord (the "**Rent**"). *See* Lease, § 1.03.

6. Starting in June 2019, and through the Petition Date, the Operating Debtor failed to stay current with its obligations under the Lease. On November 1, 2019, and again on February 5, 2020, counsel for the Landlord served two separate Notices of Default. The defaults were never cured.

7. As of the Petition Date, the Operating Debtor was in default of its payment obligations under the Lease since June 2019 in the total amount of $588,645.04 (the "**Pre-Petition Rent**").

8. On or about June 8, 2020, in accordance with the terms of the Lease and the Letter of Credit, the Landlord drew down on the Letter of Credit to pay the Pre-Petition Rent, as well as the June 2020 rent that became due as of June 1, 2020, in the aggregate amount of $660,673. The amount of future draws available under the Letter of Credit is currently $390,047.[3]

### ii. The Operating Debtor's Pre-Petition Actions Caused Mechanic's Liens to be Filed Against the Premises

9. Pursuant to Section 3.02 of the Lease, the Operating Debtor is required to discharge, by bond or otherwise, any mechanic's liens filed against the Premises within thirty (30) days after being notified thereof. Lease, § 3.02.

---

[3] Under section 35.03 of the Lease, the Operating Debtor is obligated to restore the Letter of Credit to the original amount, and its failure to do so is a monetary default in the payment of Rent under the Lease. Lease, § 35.03. To date, the Operating Debtor has not restored the Letter of Credit.

3

10. As of this date, upon information and belief, the following mechanic's liens have been filed (the "**Lien Notices**") against the Premises for services rendered to, but unpaid by, the Operating Debtor, in an aggregate amount in excess of $715,000 (collectively, the "**Liens**"): [4]

| Claimant | Date of Lien Filing | Amount |
|---|---|---|
| Visual Millwork & Fixture Mfg. Inc. | August 15, 2019 | $5,360.00 |
| The Ridgeway Corporation | November 1, 2019 | $14,345.00 |
| Platinum Maintenance Services Corp. | May 22, 2020 | $14,908.85 |
| CCG Construction LLC | May 22, 2020 | $54,652.47 |
| Sweet Construction Group Ltd. | June 9, 2020 | $586,098.55 |
| Henick-Lane, Inc. | June 16, 2020 | $40,366.27 |
| | | |
| **TOTAL** | | **$715,731.14** |

11. In Paragraph 19 of the *Declaration of John Barrett in Support of Critical Vendor Motion, Response to Landlord Motion, and Update with Respect to Post Opening Operations*, dated July 16, 2020 (the "**Response Declaration**") [Dkt. No. 51], the Debtors assert that "it is the Landlord's obligation to pay a portion of tenant improvement costs", and "the Landlord is withholding at least $350,000 that should go towards discharge of [the mechanics'] liens," therefore seeking to shift the burden of payment of the Liens from the Operating Debtor to the Landlord. Response Declaration at ¶ 20. This contention is not supported by the terms of the Lease. Under Paragraph 3.11 of the Lease, the Landlord is indeed obligated to contribute a maximum of $1,020,200 (the "**Owner's Work Contribution**") in three phases (of 33% each) towards the cost and expense of certain of the Operating Debtor's alterations to the Premises,

---

[4] After investigation, upon information and belief, the Landlord believes that most of the Lien Notices were filed by subcontractors of Sweet Construction Group, Ltd. ("**Sweet**"), and may in fact be subsumed in the Lien Notice filed by Sweet, which, if true, would reduce the total amount of the mechanics' liens against the Premises to amount of the Lien Notice filed by Sweet in the amount of $586,098.55.

"[p]rovided that Tenant is not then in default under any of the terms, covenants or conditions of th[e] Lease", and the tenant provides certain documentation and information at each stage to allow the payment of such funds. Lease, § 3.11(A) and (B). The Operating Debtor acknowledges in the Response Declaration that the Landlord has previously released payments of approximately $680,000, or approximately 66% of the Owner's Work Contribution, to the Operating Debtor in satisfaction of its obligations under section 3.11 of the Lease. This leaves a balance of approximately $340,000 remaining to be paid under section 3.11(B)(iii) of the Lease, which is only required to be paid if the following conditions are met:

> [T]he balance of Owner's Work contribution shall be paid to Tenant within thirty (30) days after notice to Owner of the satisfaction of the following conditions: (a) Tenant shall have opened the Demised Premises for the conduct of business to the general public with Tenant's Initial Installation complete, (b) delivery to Owner of evidence, in form reasonably acceptable to Owner, of the payment of the total costs and expenses of Tenant's Initial Installation in an amount at least equal to the amount of Owner's Work Contribution, (c) delivery to Owner evidence that all consents, approvals, or signoffs be obtained by Tenant under any Legal Requirements or as required by any Governmental Authority have been obtained, (d) delivery to Owner of final waivers of mechanic's liens from all contractors, subcontractors, materialmen and laborers who were hired to perform any services or deliver any materials in connection with Tenant's Initial Installation and (e) Tenant shall have paid the first month's Fixed Rent due under this Lease.

Lease, § 3.11(B)(iii).

12. Section 3.11 of the Lease only applies, in the first instance, if the Operating Debtor is not in default of the terms of the Lease, which the Operating Debtor was and has been since June 2019. Second, section 3.11(B)(iii)(d) requires "delivery to Owner of final waivers of mechanic's liens from all contractors, subcontractors, materialmen and laborers who were hired to perform any services or deliver any materials in connection with Tenant's Initial Installation." In light of the Lien Notices, the Operating Debtors have not been able to comply with this condition. Finally, the Landlord has also been made aware of an electrical permit on the Premises that had been opened but not closed by the Operating Debtor which is interfering with the Landlord's operation

5

of the Premises, and violates the condition of payment under section 3.11(B)(iii)(c). The Landlord estimates the cost of closing the permit to be approximately $15,000 to $20,000. The Landlord therefore is not obligated to pay the final installment of the Owner's Work Contribution, and the Operating Debtor is responsible for paying its contractors for construction costs on the Premises and discharging the Liens as obligated under section 3.02 of the Lease.[5]

13. As a result of the Operating Debtor's failure to satisfy its obligations to discharge the Liens filed against the Premises, Landlord will incur claims, attorneys' fees and costs to defend any actions filed by the mechanics' lien claimants to preserve its interest in the Premises, as well as potential administrative claims against the Operating Debtor for their failure to bond against or discharge the Liens.

### iii. The Operating Debtor's Post-Petition Operations

14. On June 23, 2020, the Operating Debtor filed the *Motion for Entry of an Order (I) Approving Relief Related to the Interim Budget and (ii) Granting Related Relief* (the "**Rent Deferral Motion**") [Dkt. No. 35], which sought, *inter alia*, authority from this Court to defer all Rent to the Landlord through September 25, 2020 (the "**Extension Date**"). On July 8, 2020, Landlord filed an objection to the Rent Deferral Motion, and a cross-motion to compel the Operating Debtor to timely perform its post-petition obligations under Bankruptcy Code § 365(d)(3) (the "**365(d)(3) Cross-Motion**") [Dkt. No. 46].

15. The Landlord and the Operating Debtor subsequently entered into an agreement with respect to the Rent Deferral Motion, on the terms set forth in the Order of this Court entered on August 11, 2020 (the "**Rent Deferral Order**") [Dkt No. 66], whereby, *inter alia*, the Operating

---

[5] Even if the Operating Debtor is correct and the Landlord would have an obligation to pay the Liens in accordance with section 3.11 of the Lease, the remaining amount of the Owner's Work Contribution is approximately $340,000, which is at least $250,000 short of the payoff amount of the Liens, an amount that would be the obligation of the Operating Debtor under section 3.02 of the Lease.

Debtor agreed to make partial rent payments for the months of June, July, and August 2020, with all parties reserving all rights to the balance of the Rent. The parties further agreed to (i) attempt to negotiate a modification of the Lease in good faith, and (ii) adjourn the final hearing on the 365(d)(3) Cross-Motion to October 8, 2020 (the "**October 8th Hearing**").

16. In order to confirm a plan, the Operating Debtor must satisfy in full the Landlord's post-petition administrative expense claim against the Estate, which it estimates at approximately $1.5 million. In accordance with the Rent Deferral Order, the Operating Debtor made partial rent payments of $45,000 towards its post-petition rent obligation for July, August and September 2020, leaving a balance of approximately $226,434 due and owing to the Landlord for that period, plus use and occupancy from the Lease Rejection Date (as defined below). If the Landlord is forced to discharge the Liens (which, again, is the obligation of the Operating Debtor under section 3.02 of the Lease), the Operating Debtor will be obligated to reimburse the Landlord for any and all amounts paid of no less than approximately $586,000. The Debtor is also obligated to restore the Letter of Credit (which has been drawn down to $390,047) to the original amount of $1,050,720 (with the failure to do so a monetary default under the Lease). Lease, § 35.03. In all, the post-petition defaults under the Lease aggregate to at least $1,500,000, which constitutes a post-petition administrative expense claim against the Estate that the Operating Debtor must pay in full in order to confirm its chapter 11 plan under Bankruptcy Code § 1129(a)(9)(A).

17. Since the entry of the Rent Deferral Order, the Landlord and Operating Debtor engaged in a good faith effort to resolve all issues with respect to the Lease, but were not able to reach a mutually agreeable modification of the Lease prior to its rejection as of September 26, 2020.

### iv. The Rejection of the Lease Under Bankruptcy Code § 365(d)(4)

18. Under Bankruptcy Code § 365(d)(4)(A), an "unexpired lease of nonresidential property under which the debtor is the lessee shall be deemed rejected and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of – (i) the date that is 120 days after the date of the order for relief; or (ii) the date of the entry of an order confirming the plan." Bankruptcy Code § 365(d)(4)(A). "The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause." *See* Bankruptcy Code § 365(d)(4)(B).

19. The Debtors commenced this Bankruptcy Case on May 29, 2020. The 120th day from the Petition Date was September 26, 2020 (the "**Lease Rejection Deadline**"). In accordance with Bankruptcy Code § 365(d)(4), the Lease was due to be rejected as a matter of law as of September 26, 2020, unless the Debtors filed a motion to extend the deadline prior to that date. The Debtor allowed the deadline to expire without filing a motion requesting an extension of the deadline, and therefore the Lease was rejected by operation of law as of September 26, 2020.

20. On October 1, 2020, the Landlord, through counsel, sent an email to Operating Debtor's counsel requesting that the Debtor comply with its obligations under Bankruptcy Code § 365(d)(4)(A) and immediately vacate and surrender the Premises to the Landlord. The Operating Debtor has not vacated or surrendered the Premises. The Operating Debtor requested an adjournment of the October 8th Hearing to consider the situation, and offered to pay the Landlord the amount of $17,500 in payment for use and occupancy of the Premises pending the adjourned hearing, which the Landlord accepted. Shortly thereafter, the Debtors filed the Motion.

## Jurisdiction and Statutory Predicates

21. This Court has jurisdiction over the Cross-Motion pursuant to 28 U.S.C. §§ 157 and 1334. The venue for this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

22. The statutory predicates for the relief sought in the Cross-Motion are Bankruptcy Code §§ 105(a), 362(a) and (d), and 365(d)(5).

## Objection and Cross-Motion

23. Bankruptcy Code § 365(d)(4) states in pertinent part:

> (A) Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of—
>
> (i) the date that is 120 days after the date of the order for relief; or
> (ii) the date of the entry of an order confirming a plan.
>
> (B) (i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause. . . .

24. Pursuant to Bankruptcy Code § 365(d)(4), if a chapter 11 debtor-in-possession takes no action on an unexpired executory lease or contract prior to the time period proscribed in such section, then the "tenant's leasehold right to possession of the premises has legally expired" and "the lease [is] deemed rejected by operation of law." *In re BSL Operating Corp.*, 57 B.R. 945, 947 (Bankr. S.D.N.Y. 1986). Moreover, once the deadline passes, courts lack any power to "retroactively extend the time for the Debtor to file a motion to assume the lease." *In re Southampton Yen Rest. Grp. LLC*, No. 09-13874 (MG), 2009 WL 3925563, at *3 (Bankr. S.D.N.Y. Nov. 16, 2009). Upon rejection, the debtor-in-possession must immediately surrender the non-residential property to the lessor. *See BSL Operating Corp.*, 57 B.R. at 951 ("While compliance

with the mandate of section 365(d)(4) requires alacrity, it is not a difficult requirement to meet. The statute is demanding, but clear. [The landlord is] entitled to be the beneficiary of an immediate surrender of the premises.").

25. The Debtors commenced this Bankruptcy Case on May 29, 2020. The 120th day from the Petition Date was September 26, 2020. In accordance with Bankruptcy Code § 365(d)(4), the Lease was due to be rejected as a matter of law as of September 26, 2020, unless the Debtors filed a motion to extend the deadline prior to that date. The Debtors allowed the deadline to expire without timely filing a motion requesting an extension of the deadline. Therefore the Lease was rejected by operation of law as of September 26, 2020, and the Debtor's right to remain in possession of the Premises has been terminated.

26. The Debtors' attempt to avoid the effect of the passage of the Lease Rejection Deadline have no merit. It searches for some relief in the Rent Deferral Order but none exists whatsoever. The Debtors contend in the Motion that the Rent Deferral Order extended the Lease Rejection Deadline to the October 8th Hearing, citing to the following language in the order:

> 7. The parties shall make reasonable best efforts to consensually resolve any disputes related to assumption of the Lease under section 365 of the Bankruptcy Code, including but not limited to the mechanic's liens against the Premises and the owner's work contribution under the Lease. If the parties have not come to an agreement as to assumption of the Lease by September 15, 2020, Landlord reserves all rights to seek any relief with respect to the Lease, including but not limited to a motion to compel assumption or rejection of the Lease, to be heard on October 8, 2020 at 2:00 PM.
> …
>
> 10. All motions, applications, actions, or pleadings filed in these cases seeking to lift the automatic stay or seeking to compel rejection, assumption, or assumption and assignment of any unexpired leases or executory contracts, including any such motion already filed, shall be automatically adjourned to October 8, 2020 at 2:00 PM.

27. Neither of these paragraphs extends the 120-day deadline. First, the Operating Debtor's deadline to assume or reject the Lease was not even the subject of either the Rent Deferral Motion or the 365(d)(3) Cross-Motion, nor was it mentioned at oral argument on these motions. Thus, the Rent Deferral Order could not have possibly addressed the 120-day deadline, and in fact it does not. Rather, it solely addressed the issues that were raised by those two motions, and the language quoted by the Debtors simply was a means to provide a procedural mechanism to adjourn all matters related to those specific motions to the October 8th Hearing. Nothing in the language of the Rent Deferral Order granted the Debtors any substantive relief with respect to the Lease Rejection Deadline, and the fact is that the Debtors never requested any such relief prior to filing the Motion on October 7, 2020 – 11 days after the Lease Rejection Deadline. Further, the quoted language applies exclusively to any motions filed *by parties other than the Debtors*, including the Landlord. The purpose of the quoted language was to provide the Debtors an opportunity to address all motions filed by *other parties* in one hearing, as opposed to multiple hearings throughout the case, and does not in any way address any motions that the Debtors would file in this case – including a motion with respect to the assumption, assignment and rejection of the Lease. Since the Rent Deferral Order did not extend the Lease Rejection Deadline, and the Debtor did not file its Motion until after the deadline, the Lease was rejected under Bankruptcy Code § 365(d)(4) as of September 26, 2020.

28. Under Bankruptcy Code § 365(d)(4), once the Lease has been rejected, the Debtor is required to "immediately surrender" the Premises.

29. Despite the Landlord's request, the Debtor has not surrendered the Premises, thereby prejudicing the right of the Landlord to obtain immediate possession of its space and seek to re-let it.

30. Bankruptcy Code § 105(a) states that a "court may issue any order, process or judgment to carry out the provisions of this title." In light of the Debtor's failure to comply with the clear command of Bankruptcy Code § 365(d)(4), the Landlord hereby requests that the Court enter an Order compelling the Debtor to immediately surrender the Premises to the Landlord and remove its personal property from the Premises.[6]

31. Finally, to the extent necessary, Landlord requests that the automatic stay be terminated with respect to the Lease and any other action that the Landlord may find necessary to take possession of the Premises, including, but not limited to, collection and storage of the Debtor's personal property pending removal of same from the Premises.

32. Bankruptcy Code § 362(d) provides in pertinent part that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization . . .

33. As set forth above, upon rejection of the Lease under Bankruptcy Code § 365(d)(4), the Debtor's possessory rights in the Premises have been terminated. Furthermore, under Bankruptcy Code § 365(g) (and the terms of the Lease itself), the rejection of the Lease constitutes

---

[6] Landlord also reserves its right to file an administrative claim against the Debtors' estate under Bankruptcy Code § 503(b)(1) for reasonable use and occupancy charges and any other reasonable costs for every day that the Operating Debtor fails to surrender the Premises and remove its personal property after the rejection date.

a pre-petition breach of such Lease, which thereby permits the Landlord to serve a notice of cancellation of the Lease upon the Debtor and effectively terminate the Lease. The Debtor's estate no longer has any interest (possessory or otherwise) in the Lease or the Premises, and neither the Lease nor the use of the Premises are available for the Debtors' reorganization in this case.

34. To protect against any further interference from the Debtor, the Landlord requests the Court to terminate the stay to the extent necessary to permit it to take any and all actions required to terminate the Lease and preserve its interest in the Premises. Further, if the Operating Debtor has property on the Premises which it does not wish to remove, Landlord requests the property be deemed abandoned to Landlord with the attendant right to sell or otherwise dispose of such property, as permitted under section 21.01 of the Lease ("Owner shall have the right to retain any property and effects which shall remain in the Demised Premises after the Expiration Date, and any net proceeds from the sale thereof, without waiving Owner's rights with respect to any Event of Default."). Section 554(b) of the Bankruptcy Code permits the Court to order abandonment of "any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b). Pursuant to section 554(b) of the Bankruptcy Code, Landlord hereby requests authority to dispose of any abandoned property without liability to the Debtors or any third parties.

## **Reservation Of Rights**

35. Landlord reserve its rights to amend and supplement this Objection to address any additional terms or provisions either raised at the hearing or addressed in any subsequently filed budgets or other amendments or supplements to the Motion, and to otherwise assert any and all rights, claims or interests with respect to the Operating Debtor, the Rent, property of the estate or the Operating Debtor's creditors.

## Notice

36. The Landlord has provided notice of this Objection and Cross-Motion to (i) the Office of the United States Trustee, (ii) counsel for the Operating Debtor, (iii) the chapter 11 trustee, and (iv) such creditors that have a secured interest in the Debtors' cash collateral. The Landlord believes that such notice is appropriate under the circumstances of this Cross-Motion.

**WHEREFORE**, for the reasons set forth herein, Landlord respectfully requests that the Court enter an order (i) denying the Motion, (ii) granting the relief requested in the Cross-Motion, and (iii) providing such other relief as is just.

Dated: New York, New York
October 13, 2020

GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP
711 Third Avenue
New York, New York 10017
Telephone: (212) 907-7300
Facsimile: (212) 754-0330

By: /s/ Jonathan L. Flaxer
Jonathan L. Flaxer
Moshie Solomon

*Counsel for MIP 57th Development Acquisition LLC*