BALLON STOLL BADER & NADLER, P.C.
810 Seventh Avenue, Suite 405
New York, NY 10019
Telephone: (212) 575-7900
Facsimile: (212) 764-5060
Vincent J. Roldan
vroldan@ballonstoll.com

*Attorneys for Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

In Re:

MEZZ57TH LLC, et al.

   Debtors
   and Debtors in Possession
---------------------------------------------------------X

Chapter 11

Case No.: 20-11316

(Jointly administered)

## MOTION OF OPERATING DEBTOR FOR AUTHORITY TO ENTER INTO INSURANCE PREMIUM FINANCE AGREEMENT AND TO PROVIDE ADEQUATE PROTECTION

Mezz57th LLC, Debtor and Debtor-in-Possession (the "Operating Debtor") in the above-captioned case, by its attorneys, as and for its Motion for Authority to Enter into Insurance Premium Finance Agreement and to Provide Adequate Protection, and in support thereof, states as follows:

### INTRODUCTION AND BACKGROUND

1. On May 29, 2020 (the "Petition Date"), the Operating Debtor and John Barrett Inc. "JBI", collectively with the Operating Debtor, the "Debtors") filed voluntary petitions for relief pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code. The Debtors are operating their business as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2. No entity has requested the appointment of a trustee or examiner in these Chapter 11 cases.

3. On June 1, 2020, pursuant to 11 U.S.C. § 1183(a), the United States Trustee appointed Charles Persing as Subchapter V Trustee (the "Subchapter V Trustee").

4. A detailed description of the Debtors' businesses and facts precipitating the filing of the Debtors' Chapter 11 proceedings is set forth in the Affidavit of John Barrett Pursuant To Local Bankruptcy Rule 1007-2 (the "Barrett Affidavit") filed on June 3, 2020. Those facts are incorporated herein by reference.

5. In the ordinary course of business, the Operating Debtor is covered by employment practices liability insurance.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 1334 and 157(b). This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief south herein are Bankruptcy Code sections 364.

## RELIEF REQUESTED

7. The Operating Debtor is prepared to execute a Commercial Premium Finance Agreement ("Premium Finance Agreement") with FIRST Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A ("FIRST") for the financing of the Operating Debtor's employment practices liability policy (the "Policy") upon court approval. A true and correct copy of the Premium Finance Agreement is attached hereto as Exhibit A.

8. Pursuant to the Premium Finance Agreement, FIRST will provide financing to Operating Debtor for the purchase of the Policy which is essential for the operation of Operating

Debtor's business. Under the Premium Finance Agreement, the total premium amount is $57,234.0 and the total amount to be financed is $42,925.50. Under the Premium Finance Agreement, Operating Debtor has paid a $14,308.50k down payment and will pay nine (9) monthly premiums of $4947.10. As collateral to secure the repayment of the total of payments, any late charges, attorney's fees and costs (Indebtedness) under the Premium Finance Agreement, Operating Debtor is granting FIRST a security interest in, among other things, the unearned premiums of the Policy.

9. Pursuant to the terms of the Premium Finance Agreement, Operating Debtor is appointing FIRST as its attorney-in-fact with the irrevocable power to cancel the policies and collect the unearned premium in the event Operating Debtor is in default of its obligations under the Premium Finance Agreement.

10. Operating Debtor and FIRST have reached an agreement that the adequate protection appropriate for this situation would be as follows:

   a. Operating Debtor be authorized and directed to timely make all payments due under the Premium Finance Agreement and FIRST be authorized to receive and apply such payments to Indebtedness owed by Operating Debtor to FIRST as provided in the Premium Finance Agreement.

   b. If Operating Debtor does not make any of the payments due under the Premium Finance Agreement as they become due, the automatic stay shall automatically lift to enable FIRST and/or third parties, including insurance companies providing the coverage under the Policy, to take all steps necessary and appropriate to cancel the Policy, collect the collateral and apply such collateral to Indebtedness owed to FIRST by Operating Debtor. In exercising such rights, FIRST and/or third parties shall comply with the notice and other relevant provisions of the Premium Finance Agreement.

11. Operating Debtor believes that the terms of the Premium Finance Agreement are commercially fair and reasonable including the granting of a lien on the Policy to FIRST. Operating Debtor is required to maintain adequate insurance coverage and without it, would be

forced to cease operations. Operating Debtor has been unable to obtain unsecured credit to fund the Polices.

12. The relief requested by this Motion is warranted and appropriate under the circumstances. Operating Debtor submits that authorization of the Premium Finance Agreement will ensure that Operating Debtor can continue necessary operations, and will not prejudice the legitimate interests of creditors and other parties in interest, including Operating Debtor's secured creditors.

## Discussion

13. Pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its business judgment, incur secured postpetition debt if the Operating Debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estate. The Operating Debtor believes that entry into the New Premium Finance Agreements on a postpetition basis is in the best interests of their estates. Moreover, in light of their financial circumstances, alternative insurance premium finance companies may not be willing to provide insurance-premium financing to the Operating Debtor on attractive market terms on a postpetition basis. As a result, it is important for the Operating Debtor to be authorized to enter into the New Premium Finance Agreements. By this motion, the Operating Debtor seek express authority to enter into the New Premium Finance Agreements in the ordinary course of business.

14. If a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, a bankruptcy court may authorize the debtor to obtain or incur debt that is secured by a lien on property of the estate. "[Section 364] imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Bray v. Shenandoah Fed. Sav. & Loan Assoc. (In re Snowshoe Co.)*, 789 F.2d 1085,

4

4817-7157-0649, v. 1

1088 (4th Cir. 1986). A debtor need only demonstrate by a good faith effort that credit was not available without the protections available under section 364(d) of the Bankruptcy Code. *See id.*

15. Continuation of the Policy is necessary to protect the Operating Debtor and its estate from material, immediate, and perhaps irreparable harm. Termination of the Operating Debtor's Policy would expose the Operating Debtor to direct, uninsured liability for potential losses. As noted above, FIRST would only agree to provide financing under the New Premium Financing Agreements on a secured basis, and the Operating Debtor have been informed that it is common and accepted practice for insurance premium finance companies, such as FIRST, to require the borrower to grant a security interest in the insurance policies financed in exchange for the relevant financing. Nor was FIRST willing to finance the insurance premiums on the Policy on a junior or unsecured basis in this particular case. If the Operating Debtor is unable to finance their existing insurance policies, it could be obliged to pay the full premium of approximately $57,234.0 through an upfront cash payment. Such an unanticipated expense could pose a significant drain on the Operating Debtor' available liquidity. In light of the importance of both keeping the Policy in place and preserving the Operating Debtor' available liquidity, the Operating Debtor believes that it is in the best interest of their estates and all parties in interest for the Court to approve the Operating Debtor' entry into a New Premium Financing Agreements on the terms set forth herein and authorize the Operating Debtor to honor their obligations thereunder.

16. Courts have recognized the importance of a Operating Debtor honoring obligations under and renewing premium financing agreements and, thus, have granted relief similar to the relief requested in this motion under sections 105(a), 363(b), and 364(c) of the Bankruptcy Code. *See, e.g., In re Things Remembered, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 26, 2019) (authorizing payment of prepetition and postpetition obligations under secured premium financing

agreements and renewal thereof); *In re PES Holdings, LLC*, No. 18-10122 (KG) (Bankr. D. Del. Jan. 23, 2018) (same).

## **CONCLUSION**

WHEREFORE, Operating Debtor respectfully requests that this Court enter an Order authorizing it to enter into the Premium Finance Agreement with FIRST, and the Operating Debtor and FIRST be authorized and directed to take all actions necessary or appropriate to affect said agreement and for such other and granting such other further relief as is just and proper.

Dated: New York, New York
January 29, 2021

BALLON STOLL BADER & NADLER, P.C.

By:_____/s/ Vincent J. Roldan_____
    Vincent J. Roldan (VR-7450)
*Attorneys for Debtors and Debtors-in-Possession*

810 Seventh Avenue, Suite 405
New York, NY 10019
212.575-7900
Fax 212.764-5060
www.ballonstoll.com