MANDELBAUM BARRETT P.C.
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
Ph.:  973-736-4600
Fax: 973-736-4670
Vincent J. Roldan
vroldan@mblawfirm.com

Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In Re:

MEZZ57TH LLC, et al.

              Debtors and
              Debtors in Possession

--------------------------------------------------------X

Chapter 11

Case No.:  20-11316

(Jointly Administered)

## MOTION FOR ENTRY OF ORDER AUTHORIZING SALE OF LIFE INSURANCE POLICY FREE AND CLEAR OF LIENS AND ENCUMBRANCES AND COMPENSATION OF BROKER

John Barrett Inc. ("JBI"), as and for its Motion for Entry of Order Authorizing Sale of Life Insurance Policy Free and Clear of Liens and Encumbrances and Compensation of Broker (the "Motion") pursuant to section 363(b) and (f) of the Bankruptcy Code, respectfully represents:

## INTRODUCTION AND BACKGROUND

1.      On May 29, 2020 (the "Petition Date"), JBI and Mezz57th LLC (collectively, the "Debtors") filed voluntary petitions for relief pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code.  The Debtors are operating their business as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

4892-8201-2448, v. 2

2.	On June 1, 2020, pursuant to 11 U.S.C. § 1183(a), the United States Trustee appointed Charles Persing as Subchapter V Trustee (the "Subchapter V Trustee").

3.	A detailed description of the Debtors' businesses and facts precipitating the filing of the Debtors' Chapter 11 proceedings is set forth in the Affidavit of John Barrett Pursuant To Local Bankruptcy Rule 1007-2 (the "Barrett Affidavit") filed on June 3, 2020.  Those facts are incorporated herein by reference.

4.	On May 13, 2022, JBI and Mezz57th LLC ("Operating Debtor") filed that certain Amended Plan of Reorganization for Small Business Under Subchapter V of Chapter 11 [Docket 204] (the "Plan").  On June 29, 2022, the Court will conduct a hearing during which the Debtors will seek confirmation of the Plan.

## JURISDICTION

5.	This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 1334 and 157(b). This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (O).

6.	Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.	The statutory bases for the relief requested herein are §§ 330, 363(b), and 363(f) of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## KEY MAN LIFE INSURANCE POLICY

8.	JBI is the owner of a "key man" life insurance policy with Principal Life Insurance Company (the "Policy").  The Policy is a $10 million term policy that can be converted to permanent, thereby making the Policy saleable on the open market.  John Barrett (the individual)

2

is the beneficiary.

9.      On May 10, the Court entered an order (the "Valmark Retention Order") authorizing JBI to retain Valmark Securities, Inc. ("Valmark").  A copy of the Valmark Retention Order is attached hereto as Exhibit A.

*(i)      Marketing*

10.      The marketing of the Policy is described in the Declaration of Doug Wilburn, Chief Compliance Officer of Valmark, annexed hereto as Exhibit B.

11.      Valmark, with primary offices in Ohio and Minnesota, has a proprietary life settlement process which includes the collection of medical records, third-party life expectancy reports, and pertinent carrier information to market the policy for sale to institutional buyers. Valmark continually works to cultivate an extensive network of providers, now numbering 18, who purchase existing life insurance policies.

12.      Valmark marketed a $5 million portion of the Policy for sale by launching an auction process where providers bid against each other over the course of numerous rounds of bidding.  The Policy was marketed over a 3 week period prior to auction, where interested buyers can review the file and ask any questions and submit initial bids.  Valmark then launched an auction with a starting price being the highest offer collected during the 3 week marketing period.

13.      Valmark works through licensed providers who purchase policies for their institutional buyers.  As a result, Valmark is confident that by sending the case to our extensive list of providers, it has marketed the Policy to the mass majority of any potential buyers today that are institutional.

*(ii)      The winning bidder*

4892-8201-2448, v. 2

14. Ultimately, this unique process ended with LifeTrust, LLC, a licensed provider based in New York, offering $1,694,000 in what was determined to be the highest market value for the $5 million portion of the Policy.

15. To the Debtor's knowledge, LifeTrust is not insider of the debtor and has no known connections with any party connected to the bankruptcy case. The Debtor attaches a Declaration of Joseph Kashou (President of LifeTrust) as Exhibit C, and a Declaration of Timothy LeBrun (Manager of PG3 Longevity Fund LLC, funder of LifeTrust) as Exhibit D to support that there are no connections between LifeTrust, its funder, and the estates.

16. The auction and proposed sale were conducted at arms-length and with no collusion.

17. The transaction has been proposed and negotiated in good faith.

18. Concurrently with the filing of this Motion, the Debtor is submitting the Declaration of Doug Wilburn which demonstrates the following:

   a. Time, date and place of sale: Auction start date: March 15, 2022; auction end date April 7, 2022; The auction was conducted online from Valmark's Akron, Ohio headquarters.

   b. Gross dollar amount of sale: $1,694,000

   c. Commissions to Valmark: $250,000

   d. Purchaser: Lifetrust LLC, 330 Madison Avenue, 6th Floor, New York NY 10017

   e. Number of people attending the auction: 17

   f. Manner and extent of advertising of sale: Valmark marketed to its network of providers who purchase policies for their institutional buyers

The Debtor respectfully submits that the foregoing is in compliance with Rule 6004-1(f) of the Local Rules of Bankruptcy Procedure.

4892-8201-2448, v. 2

*(iii)     Valmark's commission*

19.     Pursuant to its terms of engagement, Valmark is entitled to compensation of the *lesser* of the following formulas:

| Formula | Amount |
|---|---|
| 30% of Gross Offer | $508,000 |
| 1/3 of Value Created | $564,667 |
| 5% of face Amount Sold | $250,000 |

20.     Thus, Valmark is entitled to $250,000 compensation.  After payment of Valmark's compensation, there would be net proceeds to the JBI estate of $1,444,000.

## RELIEF REQUESTED

8.     In accordance with Sections 363(b)(1) and (f) of the Bankruptcy Code, JBI seeks to sell the Policy free and clear of all liens, interests, and encumbrances.  The form purchase agreement is attached hereto as Exhibit E.

9.     Section 363(b) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." In general, a debtor may sell property of the estate outside of the ordinary course of business where the sale represents an exercise of the debtor's sound business judgment. *See, e.g., Stephens Indus., Inc. v. McClung,* 789 F.2d 386, 390 (6th Cir. 1986); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070 (2d Cir. 1983). Courts typically consider the following four factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale, (b) whether accurate and reasonable notice of the sale was given to interested parties, (c) whether the sale will produce a fair and

5

reasonable price for the property and (d) whether the parties have acted in good faith. *See, e.g., In Re Titusville County Club,* 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991). Here, each of these four factors is met.

10.     In this case, JBI believes a sound business justification exists for the sale. First, the Debtors' Plan contemplates the sale of the Policy and distribution of proceeds to 1) pay JBI creditors in full, and 2) loan funds to the Operating Debtor.   Second, concurrent with the filing of this Motion, the Debtor has served notice of the Motion as set forth below. Third, the Debtor believes the sale price is fair and reasonable.   The Policy was properly marketed by a court-approved broker. Finally, courts generally conclude that parties have acted in good faith with respect to a proposed sale if the purchase price is adequate and reasonable and the terms of the sale are fully disclosed. For the reasons set forth above, both of these requirements are met here. JBI, in exercise of its business judgment, believes that the proposed sale of the Policy to the buyer on the terms set forth in the purchase agreement is in the best interests of the estate and its creditors. For all the reasons set forth above, the sale of the Policy should be approved pursuant to Section 363(b) of the Bankruptcy Code.

11.     Under Section 363(f) of the Bankruptcy Code, a trustee may sell property of the estate free and clear of all liens, claims, encumbrances, redemption rights, and other interests (collectively, the "Property Interests") asserted in or against the property being sold if: (a) such a sale is permitted under applicable non-bankruptcy law; (b) the party asserting the Property Interest consents to the sale; (c) the sale price exceeds the aggregate value of all such liens on the property; (d) the Property Interest is subject to a bona fide dispute; or (e) the party asserting the Property Interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for

such interest. The Court may approve a sale free and clear of all Property Interests so long as one of the requirements of Section 363(f) is satisfied. *See, e.g., In re Elliot,* 94 B.R. 343, 345 (E.D. Pa. 1988).

12.     In this case, there are no liens on the Policy.  To the extent here are any liens, JBI believes that any property interests asserted in or against the Policy, if any, would be subject to money satisfaction or would meet one of the other Section 363(f) requirements. In particular, any lien holder could be compelled in a legal or equitable proceeding to accept a money satisfaction for their interest. Accordingly, JBI seeks authority to sell the bankruptcy estate's interest in the Policy pursuant to the purchase agreement free and clear of any Property Interests.

13.     Consistent with the Valmark Retention Order, JBI seeks authority to pay Valmark compensation under 11 U.S.C. 330 in the amount of $250,000.

## NOTICE

14.     Notice of this Application will be served by mail on (i) the Office of the United States Trustee for the Southern District of New York, (ii) all parties having requested notices in the case, (iii) all creditors of JBI, and (iv) the Subchapter V Trustee. JBI submits that no other or further notice need be provided.

## NO PRIOR REQUEST

15.     No prior request for the relief sought in this Motion has been made to this or any other court.

4892-8201-2448, v. 2

**WHEREFORE**, JBI respectfully requests that the Court enter an Order granting the

Motion and such other relief as the Court deems just and proper under the circumstances.

Dated: Roseland, New Jersey
May 31, 2022

MANDELBAUM BARRETT PC


By:_____/s/ Vincent J. Roldan_____
        Vincent J. Roldan (VR-7450)
*Attorneys for*
*Debtors and Debtors-in-Possession*
3 Becker Farm Road
Roseland, NJ 07068
973-974-9815
vroldan@mblawfirm.com

4892-8201-2448, v. 2