------------------------------------------------------X

In Re:                                                                  Chapter 11

     MEZZ57TH LLC                                Case No.: 20-11316
     d/b/a John Barrett

                            Debtor.

------------------------------------------------------X

## SIXTEENTH AMENDMENT TO STIPULATION AND CONSENT ORDER

Mezz57th LLC (the "Operating Debtor"), the debtor in the captioned chapter 11 case and MIP 57th Development Acquisition LLC (the "Landlord") stipulate to this Sixteenth Amendment to that certain Stipulation and Consent Order dated December 17, 2020 [Docket No. 101] ("Stipulation"), extending the term of the Stipulation pursuant to paragraph 8 thereof, and hereby agree to the following amendments.

### Amendment

1. Paragraph 1 of the Stipulation is amended to be:

    For the period of October 1, 2020 through May 31, 2022, in lieu of Fixed Rent and additional rent under the Lease, the Operating Debtor shall owe Landlord interim monthly rent (the "Interim Rent") in the amount of 16.5% of gross sales net of merchant fees and taxes (the "Gross Sales"). Commencing on June 1, 2022 (the "Alternate Rent Period"), in lieu of Fixed Rent under the Lease, the Operating Debtor shall owe and pay Landlord monthly rent (the "Alternate Rent") in accordance with Exhibit A hereto.

2. Paragraph 4 of the Stipulation is amended to be:

    Any (i) unpaid Interim Rent Balance that is not paid by the Interim Rent Balance Due Date, (ii) unpaid Interim Rent Balance for the period of October 1, 2020 through the date of this Stipulation and Order, and (iii) any Alternate Rent that is not paid in accordance with Exhibit A hereto, shall accrue as an allowed administrative expense claim against the Operating Debtor's estate under section 503(b) of the Bankruptcy Code.

3. Paragraph 6 of the Stipulation is amended to be:

Landlord agrees not to terminate the Lease in accordance with Article 16.01(a) of the Lease solely for failure to pay Fixed Rent or any additional rent under the Lease, or for any alleged non-monetary defaults under the Lease prior to the date hereof, and until the earlier of (i) July 1, 2022 or (ii) the Operating Debtor's failure to make Interim Rent and Alternate Rent payments after expiration of applicable grace periods under this Stipulation and Order. The Operating Debtor agrees to abide by all other provisions of the Lease during the term of this Stipulation and Order, and Landlord reserves the right to terminate the Lease during the term of this Stipulation and Order in the event of default under Article 16.01 of the Lease (aside from Article 16.01(a) and as otherwise set forth in this Stipulation and Order) that first occurs after the date of execution of this Stipulation and Order.

4. Paragraph 8 of the Stipulation is amended to be:

On July 1, 2022, absent a written Stipulation and Order executed by and between Landlord and the Operating Debtor to amend and/or extend the Lease or the terms of this Stipulation and Consent Order, the Lease shall be deemed rejected under section 365 of the Bankruptcy Code and shall immediately terminate, and the Operating Debtor consents, and shall not object, to (i) termination of the Lease without the requirement or necessity of the Landlord to serve a notice of termination, (ii) immediate surrender of the Premises, (iii) the entry of an order by the Bankruptcy Court compelling its surrender of the Premises, and (iv) the termination of the automatic stay

5. Paragraph 12 of the Stipulation is amended to be:

Landlord hereby withdraws the Lease Extension Objection, without prejudice, and consents to the extension of the Operating Debtor's deadline to assume or reject the Lease through and including June 30, 2022; provided, however, that in accordance with section 365(d)(4) of the Bankruptcy Code, any further extension of the Operating Debtor's time to assume or reject the Lease may only be permitted upon written consent of the Landlord.

6. Except as amended and extended pursuant hereto, no other changes or modifications to the Stipulation are intended or implied and in all other respects the Stipulation is hereby specifically ratified, restated and confirmed by all parties hereto.

7. The parties hereto agree and request that this Sixteenth Amendment to Stipulation and Consent Order be entered as a Consent Order by the United States Bankruptcy Court for the Southern District of New York.

4038309.1

**We hereby consent to the form and entry
of the within Sixteenth Amendment to Stipulation and Consent Order:**

| | |
|---|---|
| GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP | MANDELBAUM BARRETT PC |
| Counsel for Landlord | Counsel for Operating Debtor |
| By: /s/ Jonathan L. Flaxer | /s/ Vincent J. Roldan |
| Jonathan L. Flaxer | Vincent J. Roldan |
| Dated: May 31, 2022 | Dated: May 31, 2022 |

SO ORDERED:

Dated: June 2, 2022

***/s/ Sean H. Lane***
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

**Section 1.06**.  **Alternate Rent**:

A. During the Alternate Rent Period, Tenant shall pay monthly Alternate Rent equal to the greater of (i) Seventy Thousand and 00/100 ($70,000.00) Dollars and (ii) twelve and 50/100th percent (12.5%) of Gross Sales (any amount payable pursuant to the foregoing subsection (ii), the "**Gross Sales Alternate Rent**"); provided, however, in the event that Tenant is obligated to pay Gross Sales Alternate Rent as set forth above, Tenant may defer payment of a portion of the Gross Sales Alternate Rent so that Tenant only pays the greater of (a) Seventy Thousand and 00/100 ($70,000.00) Dollars and (b) eleven percent (11%) of Gross Sales to Owner in such month (any such deferred amounts, the "**Deferred Amounts**").  Any Deferred Amounts which accrue between January through June in any year shall be paid on or before July 31st of such year and any Deferred Amounts which accrue between July through December in any year shall be paid on or before the next occurring January 31st.  Tenant shall submit to Owner a monthly report not later than the tenth (10th) day following each calendar month of the Alternate Rent Period, which shall set forth the amount of Gross Sales for the preceding calendar month and which shall be accompanied by the Alternate Rent payable for such month.  The report shall be certified as complete and correct by Tenant's Chief Financial Officer, or if the Chief Financial Officer is not reasonably available, by an officer of Tenant or by Tenant's certified public accountant.

B. "Gross Sales" means the dollar aggregate of: (1) the entire amount of the price charged for all goods, wares and merchandise sold, leased, licensed or delivered and all charges for all services sold or performed by Tenant at, upon or from the Demised Premises, whether made for cash, by check, on credit, by charge account or otherwise, without reserve or deduction for inability or failure to collect the same, including, but not limited to, the following transactions: (A) where the orders originated at or are accepted by Tenant in the Demised Premises, but delivery or performance thereof is made from or at any other place; all sales made and orders received in or at the Demised Premises shall be deemed as made and completed therein, even though the payment of account may be transferred to another office for collection, and all orders which result from solicitation off the Demised Premises but which are conducted by personnel operating from or reporting to or under the control or supervision of any employee of Tenant at the Demised Premises shall be deemed part of Gross Sales; (B) pursuant to mail, telephone, video, electronic or other similar orders received or billed at or from the Demised Premises; (C) by means of mechanical or other vending devices (unless in non-sales areas and for the exclusive use of Tenant's employees); and (D) originating from whatever source and which Tenant in the normal and customary course of Tenant's operations would credit or attribute to Tenant's business conducted in the Demised Premises; and (2) all monies or other things of value received by Tenant from Tenant's operations at, upon or from the Demised Premises which are neither included in nor excluded from Gross Sales by other provisions of this definition, but without any duplication, including, without limitation, finance charges, cost of gift or merchandise certificates and all deposits not refunded to customers.  Notwithstanding the foregoing, Gross Sales shall not include the following:  (1) the exchange of merchandise between stores of Tenant (or affiliates of Tenant) where such exchanges are made solely for the convenient operation of Tenant's business and not for the purpose of consummating a sale which has been made at, upon or from the Premises; (2) returns to shippers or manufacturers; (3) sales of fixtures which are not part of Tenant's stock in trade and which are not sold in the regular course of Tenant's business; (4) cash or credit refunds made upon transactions included within Gross Sales but not exceeding the selling price of the merchandise returned by the purchaser and accepted by Tenant; (5) any discounts offered to employees where Tenant determines to be appropriate and part of its ordinary business practice; (6) the amount of any city, county, state or federal sales, luxury, excise, or similar tax on such sales provided such tax is both added to the selling price and paid to the taxing authority by Tenant (but not by any vendor of

Tenant); provided, however, no franchise or capital stock tax and no income or similar tax based upon income, profits or Gross Sales as such shall be deducted from Gross Sales; (7) bad debts determined in accordance with generally accepted accounting principles, unpaid balance on credit sales or uncollected bad checks written off or uncollected or uncollectible credit card accounts, bank charge backs, penalties or charges for returned checks determined in accordance with generally accepted accounting principles; (8) interest, service, finance or sales carrying charges respecting credit cards, debit cards or otherwise actually paid by Tenant (other than the foregoing imposed pursuant to Tenant or an affiliated entity initiated financing program); (9) shipping and delivery charges, at Tenant's actual cost; (10) insurance proceeds (other than proceeds of business interruption insurance); and (11) the proceeds of sales of gift certificates or other similar vouchers in either case prior to the time that such certificates or vouchers have been converted into a sale by redemption at the Premises.

   C. Each charge or sale upon installment or credit shall be treated as a sale for the full price in the month during which such charge or sale is made, irrespective of the time when Tenant shall receive payment (whether full or partial) therefor.  No deduction shall be allowed for uncollectible credit accounts.

   D. For the purposes of this Section, the term "<u>Tenant</u>" shall include any licensee, concessionaire or subtenant of Tenant, but Gross Sales shall not include any amount which is based upon the net income or profit of any occupant.

   E. Tenant shall keep and maintain (and shall cause any licensee, concessionaire and subtenant to keep and maintain) in its main accounting office, full and accurate books of account and records from which Gross Sales can be determined and which shall be conveniently segregated from other business matters.  Such records shall be so kept and maintained (properly totaled and added) for at least thirty six (36) months after the end of the period in question.  The books and records shall be used and maintained in the same manner as Tenant uses and maintains the same for all of its other stores, provided that such records shall be maintained in accordance with generally accepted accounting principles, consistently applied.  Such records shall be so kept and maintained (properly totaled and added) for at least twelve (12) months after the end of the Alternate Rent Period.

   F. Owner shall have the right upon reasonable prior notice and during regular business hours but not more than once with respect to the Alternate Rent Period, to inspect and audit all such books and records and all other papers and files of Tenant and any licensee, concessionaire or subtenant relating to Gross Sales only (but in no event shall Owner be entitled to review Tenant's budgeting information or cost of goods information).  Tenant and each licensee, concessionaire or subtenant shall produce the appropriate books and records on request of Owner related to Tenant's Gross Sales only.  The acceptance by Owner of payments of Alternate Rent shall be without prejudice to Owner's right to conduct an audit of Tenant's and Tenant's subtenant's, concessionaire's, and licensee's books and records.  All such audits shall be conducted either electronically or at Tenant's main accounting office or at the office of Tenant's certified public accountant, so long as each such office is located in the United States.

   G. If any such audit shows that the amount of Gross Sales on any such statement was understated by more than five (5%) percent of Gross Sales, then Tenant shall pay to Owner the reasonable cost of its audit and investigation, which cost, if the audit was not conducted by an independent accountant, shall be determined on a "time-and-expense" basis and the rate per hour shall not exceed that charged for similar personnel by a national firm of independent certified public accountants.  If any audit shows that the amount of Gross Sales was understated by more than five (5%), so that Owner shall have been paid less Alternate Rent than that to which it would have been entitled had Tenant not understated its Gross Sales, then Tenant shall pay to Owner the amount of Alternate Rent Tenant should

have paid but did not pay to Owner, plus interest thereon at the rate which is the greater of (i) twelve (12%) percent per annum, or (ii) the then effective prime rate as published from time to time in the "Money Rates" section of the Wall Street Journal (or any successor publication thereto) plus two (2%) percent per annum for the period from the original due date such Alternate Rent should have been due until the date that payment was made, compounding on a six (6) month basis.  If, at any time within twelve (12) months after the end of the Alternate Rent Period, Owner shall contend that an error may exist with respect to any of Tenant's books, records, papers or files related to Gross Sales, then the period referred to in this Section shall be extended until Owner's contention has been finally determined.

       H.     Owner shall hold in confidence all sales figures and related information obtained from Tenant's records, except as may be necessary for the enforcement of Owner's rights under this Lease, in connection with prospective financing or prospective sale of the Demised Premises or the Retail Unit, any tax proceedings, or pursuant to any legal requirements.  Owner shall in no event be construed, held or become in any way or for any purpose a partner, associate or joint venturer of Tenant or any party associated with Tenant in the conduct of Tenant's business or otherwise.