MANDELBAUM BARRETT PC
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
Ph.: 973-736-4600
Fax: 973-736-4670
Vincent J. Roldan
vroldan@mblawfirm.com

Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In Re:

MEZZ57TH LLC, et al.

          Debtors
     and Debtors in Possession

-------------------------------------------------------X

Chapter 11

Case No.: 20-11316

(Jointly administered)

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** ("Settlement Agreement") by, between and among Mezz57th LLC ("Operating Debtor"), John Barrett ("Mr. Barrett"), and Sweet Construction Group Ltd. ("Sweet"), is made and entered into as of July ___, 2022.

**WHEREAS,** on May 29, 2020 (the "Petition Date"), the Operating Debtor commenced with this Court a voluntary case under Subchapter V of Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

**WHEREAS**, the Operating Debtor filed its bankruptcy schedules on June 20, 2022 and scheduled Sweet (erroneously named "The Sweet Construction Group") with an unsecured claim of $615,723.49 (the "Sweet Claim") [Docket 20];

**WHEREAS**, on June 9, 2020, Sweet filed a mechanic's lien on the real property of MIP 57th Development Acquisition LLC ("Landlord") in the amount of $586,098.55 (the "Sweet Lien");

**WHEREAS**, on July 26, 2022, the Operating Debtor filed a Second Amended Plan of Reorganization For Small Business Under Subchapter V of Chapter 11 (the "Plan");

**WHEREAS**, following good faith negotiations, Sweet, Mr. Barrett, and the Operating Debtor desire to settle and compromise this matter on the terms set forth herein; and

**NOW THEREFORE**, in consideration of the mutual promises and covenants contained herein, the Parties hereby stipulate and agree as follows:

1. Contingent on the release and discharge of the Sweet Lien, Sweet shall have an allowed administrative claim against the Operating Debtor in the amount of Four Hundred Twenty Five Thousand Dollars ($425,000) (the "Allowed Claim"). The Allowed Claim shall be paid to Sweet in full by bank check, certified check or wire transfer on the Effective Date of the Plan (the "Settlement Payment") payable to Ruskin Moscou Faltischek, P.C., as counsel to Sweet Construction Group.

2. Upon execution of this Settlement Agreement, Sweet shall execute a release and discharge of the Sweet Lien (the "Release"). The Release shall be delivered to Ruskin Moscou Faltischek, P.C., as Escrow Agent (the "Escrow Agent") pursuant to the Escrow Agreement annexed hereto as Exhibit 1 (the "Escrow Agreement") to hold in escrow pending payment and transfer of the Settlement Payment. Upon the payment and honor of the Settlement Payment, the Escrow Agent is authorized and directed to deliver the Release to the Operating Debtor, with copy to counsel to the Landlord in accordance with the terms and conditions of the Escrow Agreement. The date of payment of the Settlement Payment and delivery of the Release from the

Escrow Agent to the Operating Debtor with copy to counsel to the Landlord is defined herein as the "Triggering Event."

3. Effective as of the Triggering Event, the Operating Debtor and Mr. Barrett, on behalf of themselves and all of their respective family members, relatives, employees, contractors, agents, affiliates, subsidiaries, parents, successors and assigns (collectively, the "Barrett Releasing Parties") shall forever remise, release, acquit, satisfy, and discharge Sweet, its principals, officers, directors, shareholders, agents, attorneys, servants, employees, heirs, administrators, executors, successors or assigns and/or representatives (collectively, the "Sweet Releasees") from all rights, claims (as such term is defined in section 101 of the Bankruptcy Code), causes of action, defenses, debts, demands, damages, obligations, judgments, and liabilities of any kind or nature whether under contract or tort, at law or in equity or otherwise, known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto (collectively, "Causes of Action") whether in law or equity, whether known or unknown, whether disclosed or undisclosed, whether anticipated or unanticipated, whether asserted or unasserted, whether direct or indirect, whether contingent or liquidated, held by the Barrett Releasing Parties, that are based in whole or in part on any act, omission, transaction, or other occurrence taking place on, or prior to, the Triggering Event, which any Barrett Releasing Party has, had, or may have against any of the Sweet Releasees, *provided, however*, that such release shall not apply to any obligations of the Sweet Releasees under this Settlement Agreement, or documents executed in connection herewith. The release hereunder shall be effective notwithstanding that any Barrett Releasing Party or other entity may thereafter discover facts in addition to, or different from, those which any Barrett Releasing Party or such other entity previously knew or believed to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and the Barrett

Releasing Parties and any successors or assigns are hereby expressly deemed to have waived any and all rights that they may have under any statute or common law principle which would limit the effect of the foregoing release, waiver, and discharge to those claims actually known or suspected to exist on the Triggering Event.

5. Effective as of the Triggering Event, Sweet, on behalf of itself and all of its employees, contractors, agents, affiliates, subsidiaries, parents, successors and assigns (collectively, the "Sweet Releasing Parties") shall forever remise, release, acquit, satisfy, and discharge the Operating Debtor and Mr. Barrett, their family members, relatives, principals, officers, directors, shareholders, agents, attorneys, servants, employees, heirs, administrators, executors, successors or assigns and/or representatives (collectively, the "Barrett Releasees") from all Causes of Action whether in law or equity, whether known or unknown, whether disclosed or undisclosed, whether anticipated or unanticipated, whether asserted or unasserted, whether direct or indirect, whether contingent or liquidated, held by the Sweet Releasing Parties, that are based in whole or in part on any act, omission, transaction, or other occurrence taking place on, or prior to, the Triggering Event, which any Sweet Releasing Party has, had, or may have against any of the Barrett Releasees, *provided, however*, that such release shall not apply to any obligations of the Barrett Releasees under this Settlement Agreement, or documents executed in connection herewith. The release hereunder shall be effective notwithstanding that any Sweet Releasing Party or other entity may thereafter discover facts in addition to, or different from, those which any Sweet Releasing Party or such other entity previously knew or believed to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and the Sweet Releasing Parties and any successors or assigns are hereby expressly deemed to have waived any and all rights that they may have under any statute or common law principle which would limit

the effect of the foregoing release, waiver, and discharge to those claims actually known or suspected to exist on the Triggering Event.

6. This Settlement Agreement is a compromise of a claim and is not to be construed as an admission of any liability.

7. This Settlement Agreement is subject to Court approval.

8. The Parties hereby declare that the terms of this Settlement Agreement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise, settlement and release of any and all claims disputed or otherwise, to the extent set forth herein.

9. The Parties each warrant that they have made no assignment, and hereafter will make no assignment of any claim, chose in action, right of action, or any other right released pursuant to this Settlement Agreement.

10. The Parties shall each bear their respective attorneys' fees and costs relating to the costs associated with this Settlement Agreement, except where otherwise provided. However, if any action or proceeding is commenced by any party hereto to enforce the provisions of this Settlement Agreement, the prevailing party shall be entitled to an award, in addition to any other claims or damages, of its costs and expenses including attorneys' fees, in connection with said enforcement action.

11. The Parties hereto have read all of the foregoing and represent that this Settlement Agreement has been explained to them by their respective legal counsel, and that each understands all of the provisions hereto.

12. The Parties agree that facsimile and electronic signatures shall have the same force and effect as original signatures. This Settlement Agreement may be executed in

counterparts and all counterparts so executed shall constitute one Agreement which shall be binding on the Parties hereto.

13. The Settlement Agreement shall be governed and construed in accordance with the laws of the State of New York, without regard to conflict of law principles. Should any dispute arise under this Agreement, the Parties consent to personal jurisdiction in the State of New York, and agree that any lawsuit, claim, dispute, or action arising out of or concerning this Settlement Agreement shall exclusively be brought in the United States Bankruptcy Court for the Southern District of New York if it has, can or may acquire jurisdiction. Each Party consents to the jurisdiction of such court (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue laid therein. Such court shall have and retain exclusive jurisdiction over any such action or proceeding.

14. This Settlement Agreement together with the exhibits attached hereto contains the entire understanding by and between the Parties concerning this matter and supersedes all prior or proposed agreements and understandings, both oral or written. The Parties acknowledge and represent that they have not relied on any statements, agreements, representations, promises, warranties, or other assurances, oral or written, other than those contained herein.

15. This Settlement Agreement shall be binding upon the representatives, assigns, and successors of the Parties and their affiliates, and shall inure to the benefit of such representatives, assigns, and successors of the assigning Party.

16. The Parties acknowledge that this Settlement Agreement is the result of arm's-length negotiations between sophisticated parties each afforded representation by legal counsel. Each and every provision of this Settlement Agreement shall be construed as though all Parties

977958.4
4858-4672-7207, v. 3

participated equally in the drafting of same, and any rule of construction that a document shall be construed against the drafting party shall not be applicable to this Settlement Agreement.

*[Signatures appear on following page]*

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed by themselves or on their behalf by their respective attorneys as of the date first above mentioned.

**Sweet Construction Group Ltd.**

By: _____

Print Name: _____

Title: _____

**Mezz57th LLC., Debtor & Debtor-In-Possession**

By: _____

Print Name: _____

Title: _____

**John Barrett**

By: _____

**SO ORDERED:**

_____
**UNITED STATES BANKRUPTCY JUDGE**

EXHIBIT 1 TO SETTLEMENT AGREEMENT

# **ESCROW AGREEMENT**

ESCROW AGREEMENT (the "Escrow Agreement") is made as of this __ day of July, 2022, by, between and among Mezz57th LLC ("Operating Debtor"), John Barrett ("Mr. Barrett"), Sweet Construction Group Ltd. ("Sweet"), and Ruskin Moscou Faltischek, P.C., with an office at 1425 RXR Plaza, East Tower, 15th Floor, Uniondale, New York 11556-1425 solely in its capacity as escrow agent ("RMF" or "Escrow Agent").

W I T N E S S E T H:

WHEREAS, on May 29, 2020 (the "Petition Date"), the Operating Debtor commenced with this Court a voluntary case under Subchapter V of Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, the Operating Debtor filed its bankruptcy schedules on June 20, 2022 and scheduled Sweet (erroneously named "The Sweet Construction Group") with an unsecured claim of $615,723.49 (the "Sweet Claim") [Docket 20];

WHEREAS, on June 9, 2020, Sweet filed a mechanic's lien on the real property of MIP 57th Development Acquisition LLC ("Landlord") in the amount of $586,098.55 (the "Sweet Lien");

WHEREAS, on July 26, 2022, the Operating Debtor filed a Second Amended Plan of Reorganization For Small Business Under Subchapter V of Chapter 11 (the "Plan");

WHEREAS, following good faith negotiations, Sweet, Mr. Barrett, and the Operating Debtor desire to settle and compromise this matter on the terms set forth herein;

WHEREAS, the parties have entered into that certain Settlement Agreement dated as of July __, 2022 (the "Settlement Agreement");

WHEREAS, pursuant to the terms and conditions of the Settlement Agreement, Sweet shall execute a release and discharge of the Sweet Lien (the "Release") and shall deliver the Release into escrow pending payment and honor of the settlement payment in the amount of $425,000.00;

WHEREAS, upon the execution of this Escrow Agreement by the parties hereto, Sweet will deliver the Release to the Escrow Agent to be held pursuant to the terms and conditions contained herein; and

NOW, THEREFORE, the parties hereto agree as follows:

1. Recitals. The above recitals are incorporated herein by reference.

2. Escrow. The Release shall be delivered into escrow (the "Escrow") and delivered only in accordance with this Escrow Agreement.

978853

3. Release of Escrow.

3.1 Sweet shall have an allowed administrative claim against the Operating Debtor in the amount of Four Hundred Twenty Five Thousand Dollars ($425,000) (the "Allowed Claim"). The Allowed Claim shall be paid to Sweet in full by bank check, certified check or wire transfer on the Effective Date of the Plan (the "Settlement Payment") payable to Ruskin Moscou Faltischek, P.C., as counsel to Sweet Construction Group.

3.2 Upon the payment and honor of the Settlement Payment, the Escrow Agent is authorized and directed to deliver the Release to the Operating Debtor, with copy to counsel to the Landlord in accordance with the terms and conditions of the Escrow Agreement.

3.3 Upon delivery of the Release to Operating Debtor counsel, the Escrow Agent shall be relieved of any further obligations and, if requested, Mr. Barrett, the Operating Debtor and Sweet will execute a release in favor of RMF.

4. Rights, Duties and Responsibilities of Escrow Agent. It is understood and agreed that the duties of the Escrow Agent are purely ministerial in nature, and that:

4.1 The Escrow Agent shall be under no duty or responsibility to enforce collection of any check delivered to it pursuant to the terms hereof. The Escrow Agent shall return to the drawer, any check received by the Escrow Agent which shall have been dishonored.

4.2 The Escrow Agent shall be entitled to rely upon the accuracy of, act in reliance upon the contents of, and assume the genuineness of, any notice, instruction, certificate, signature, instrument, or other document which shall have been or shall be provided to the Escrow Agent without verifying the truth or accuracy thereof. The Escrow Agent shall not be obligated to make any inquiry as to the authority, capacity, existence, or identity of any person purporting to provide any such notice or instructions, or as to the execution of any such certificate, instrument or other document.

4.3 If the Escrow Agent shall be uncertain as to its duties or rights hereunder or shall receive instructions with respect to the Escrow which it, in its sole judgment, deems to be in conflict either with other instructions received by it or with any provision of this Escrow Agreement, it shall be entitled to (a) hold the Release in Escrow pending the resolution of such uncertainty to the Escrow Agent's sole satisfaction, whether by final non-appealable order of a court of competent jurisdiction or otherwise, or (b) deliver the Release to the Clerk of a court of competent jurisdiction in a proceeding to which all parties in interest shall be joined. Upon the deposit by the Escrow Agent of the Release with the Clerk of any such court, the Escrow Agent shall be relieved of all further obligations and released from all liability hereunder. Any court order referred to above shall be accompanied by a legal opinion by counsel for the presenting party satisfactory to the Escrow Agent to the effect that said court order is final and non-appealable.

4.4 The Escrow Agent shall not be liable for any action taken or omitted hereunder, or for the misconduct of any employee, agent, or attorney appointed by it, except in the

case of willful misconduct or gross negligence. At the sole cost and expense of Mr. Barrett, the Operating Debtor and Sweet the the Escrow Agent shall be entitled to consult with the counsel of its own choosing and shall not be liable for any action taken, suffered, or omitted by it in accordance with the advice of such counsel.

   4.5  The Escrow Agent shall have no responsibility at any time to ascertain whether any security interest exists in the Escrow or any part thereof, or to file any financing statement under the Uniform Commercial Code with respect to the Escrow.

   4.6  Notwithstanding any provision in this Escrow Agreement to the contrary, or Section 345 of the Bankruptcy Code, the Escrow Agent shall have no duty or obligation to invest any Funds at interest.

   4.7  The Escrow Agent shall not be under any duty to give the Release presently held or to be held by it hereunder any greater degree of care than it gives its own similar property.

   4.8  This Escrow Agreement expressly sets forth all the duties of the Escrow Agent with respect to any and all matters pertinent hereto. No implied duties or obligations shall be read into this Escrow Agreement as against the Escrow Agent.

   4.9  Each party to this Escrow Agreement hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Escrow Agreement shall be brought only in the United States Bankruptcy Court, Southern District of New York and hereby expressly submits to the personal jurisdiction and venue of such courts for the purposes thereof and expressly waives any claim of improper venue and any claim that such courts are an inconvenient forum. Each party hereby irrevocably consents to the service of process pursuant to a contractual provision in any such suit, action, or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the addresses first set forth above or on the signature page, such service to become effective 10 days after such mailing. TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW WHICH CANNOT BE WAIVED, EACH PARTY HEREBY WAIVES AND COVENANTS THAT IT WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE) ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS ESCROW AGREEMENT OR THE SUBJECT MATTER HEREOF, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR TORT OR OTHERWISE.

  5.  <u>Amendment and Resignation</u>.  This Escrow Agreement may be altered or amended only with the prior written consent of the parties hereto. The Escrow Agent may resign for any reason upon three (3) Business Days' prior written notice to Mr. Barrett, the Operating Debtor and Sweet. If the Escrow Agent resigns as herein provided, it shall not be required to accept any deposit, make any disbursement, or otherwise dispose of the Escrow; provided, however, it shall be required to hold the Escrow for a period of not more than ten (10) Business Days following the effective date of such resignation, at which time (a) if a successor escrow agent shall have been appointed and written notice thereof (including the name and address of such successor escrow agent) shall have been given to the resigning Escrow Agent by Mr. Barrett, the Operating Debtor

and Sweet and such successor escrow agent, then the resigning Escrow Agent shall deliver to the successor escrow agent the Escrow; or (b) if the resigning Escrow Agent shall not have received such written notice signed by Mr. Barrett, the Operating Debtor and Sweet and a successor escrow agent, then the resigning Escrow Agent promptly shall transfer the Escrow to the Clerk of the applicable court, and the resigning Escrow Agent shall notify Mr. Barrett, the Operating Debtor and Sweet, in writing, of its deposit of the Escrow. In either case, the Escrow Agent shall be relieved of all further obligations and released from all liability under this Escrow Agreement.

      6.      <u>Indemnification and Contribution</u>.

      6.1      Mr. Barrett, the Operating Debtor and Sweet agree to indemnify the Escrow Agent and its officers, directors, employees, agents, and shareholders (jointly and severally, the "Indemnitees") against, and hold them harmless of and from, any and all losses, liabilities, costs, damages, and expenses, including, but not limited to, reasonable fees and disbursements for counsel of the Escrow Agent's choosing (collectively, "Liabilities"), which the Indemnitees may suffer or incur and which arise out of or relate to this Escrow Agreement or any transaction to which this Escrow Agreement relates, unless such Liabilities are the result of the willful misconduct or gross negligence of any of the Indemnitees.

      6.2      If the indemnification provided for in this Section 6 shall be applicable but is held to be unavailable, Mr. Barrett, the Operating Debtor and Sweet shall contribute such amounts as are just and equitable to pay or to reimburse the Indemnitees for the aggregate of any and all Liabilities actually incurred by any of them as a result of or in connection with any amount paid in settlement of any action, claim, or proceeding arising out of or relating in any way to any actions or omissions of Mr. Barrett, the Operating Debtor and Sweet.

      6.3      The provisions of this Section 6 shall survive any termination of this Escrow Agreement, resignation of the Escrow Agent, or otherwise.

      7.      <u>Fees and Expenses</u>. Mr. Barrett, the Operating Debtor and Sweet agree to reimburse the Escrow Agent for all reasonable expenses incurred by the Escrow Agent in connection with its services hereunder.

      8.      <u>Governing Law and Assignments</u>. This Escrow Agreement has been executed in, shall be construed in accordance with and governed by the laws of the State of New York (without reference to its rules as to conflicts of laws), and shall be binding upon the parties hereto and their respective successors and assigns; provided, however, any assignment or transfer by any party of its rights under this Escrow Agreement shall be void as against the Escrow Agent unless (a) written notice thereof shall have been given to and received by the Escrow Agent, and (b) the Escrow Agent shall have consented in writing to such assignment or transfer.

      9.      <u>Notices</u>. All notices required to be given in connection with this Escrow Agreement shall be sent by registered or certified mail, return receipt requested, or overnight mail, or by hand delivery with receipt acknowledged, at the address set forth above or to such other address(es) as shall be specified by any party by notice in writing given as aforesaid.

10. <u>Execution in Several Counterparts</u>.  This Escrow Agreement may be executed in several counterparts or by separate instruments and all of such counterparts and instruments shall constitute one agreement which is binding on all of the parties hereto.

11. <u>Entire Agreement</u>.  This Escrow Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings (written or oral) of the parties in connection herewith.

IN WITNESS WHEREOF, the undersigned have executed this Escrow Agreement as of the day and year first above written.

        SWEET CONSTRUCTION GROUP LTD.


By: _____
Print Name: _____
Title: _____



MEZZ57TH LLC, Debtor & Debtor-In-Possession


By: _____
Print Name: _____
Title: _____



_____
John Barrett



RUSKIN MOSCOU FALTISCHEK, P.C.
Solely in its capacity as Escrow Agent


By: _____
Print Name: _____
Title: _____

# SCHEDULE A

# WIRE TRANSFER INSTRUCTIONS